**Michael Lee SHORTS**

v.

**Bendell BARTHOLOMEW, In his Official Capacity as the Sheriff of Carroll County, Tennessee.**

Supreme Court of Tennessee, at Jackson.

Nov. 5, 2008 Session.

Feb. 20, 2009.

Benjamin S. Dempsey, Huntingdon, Tennessee, for the Plaintiff/Adverse Party, Michael Lee Shorts.

Brandon O. Gibson and Jon A. York, Jackson, Tennessee, for the Defendant/Movant, Bendell Bartholomew.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; and Kimberly J. Dean, Deputy Attorney General, for the Amicus Curiae, State of Tennessee.

## OPINION

CORNELIA A. CLARK, J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

We accepted a question of law certified by the United States District Court for the Western District of Tennessee: whether Tennessee Code Annotated section 8–8–201(a)(3) imposes any duty upon a Tennessee sheriff to calculate the release date and order the release of a Tennessee Department of Correction ("TDOC") prisoner who is serving a period of incarceration in a county jail. We answer that question in

the negative. We also conclude that, notwithstanding erroneous information contained in the relevant judgment orders of conviction entered against Plaintiff, the trial court imposed a sentence of split confinement on Plaintiff. *See* Tenn.Code Ann. § 40–35–306(a) (2006). Sentences of split confinement are required by Tennessee Code Annotated section 40–35–314(a) to be served in a local jail or workhouse. Plaintiff was not, therefore, a TDOC prisoner. We hold that Tennessee Code Annotated section 8–8–201(a)(1) & (3) does impose a duty upon the sheriff to calculate the release date and order the release of prisoners sentenced to a sentence of split confinement.

### I. Facts and Procedural History[1]

Plaintiff Michael Lee Shorts was arrested on July 10, 2002, and incarcerated in the Carroll County jail pending resolution of several charges against him. On September 9, 2002, he pleaded guilty to aggravated robbery, aggravated burglary, burglary of a vehicle, and two counts of misdemeanor theft. The trial court imposed sentences of eight years, three years, and one year, respectively, and eleven months, twenty-nine days for each of the two theft convictions. The sentences were run concurrently to one another, resulting in an effective sentence of eight years.[2] As to manner of service, the trial court ordered that Plaintiff serve one year in confinement followed by seven years of probation. Under Tennessee law, this type of sentence structure is known as "split confinement" or "shock probation."

*See* Tenn.Code Ann. § 40–35–306 (2006), Sentencing Comm'n Cmts. Subsequently, on January 13, 2003, Plaintiff pleaded guilty to burglary of a vehicle and four counts of forgery. The trial court imposed sentences of one year for each of these offenses and ran them concurrently to each other and the previous sentences. Plaintiff was ordered to serve these latter sentences by six months in confinement followed by six months of probation; thus, Plaintiff's overall effective sentence remained one year in confinement followed by seven years on probation.

The Judgment Order for each felony reflects that Plaintiff was "Sentenced to TDOC" but that he was to be released on probation after service of a period of confinement, the longest period being one year. Further, each judgment gave Plaintiff credit for time already served in the Carroll County jail, back to his original incarceration date of July 10, 2002. If the judgments had been enforced as written, Plaintiff would have completed serving one year no later than July 10, 2003. However, he remained continuously incarcerated in the Carroll County jail until February 13, 2004.

Beginning in April 2003, Plaintiff began asking about a release date. His first inquiry was to the TDOC. Amber Phillips, an employee of the TDOC's Sentence Management Services responded on May 10, 2003, by a letter that simply stated, "You are serving a split confinement. The jail will calculate your sentence."

1. The federal district court did not certify the facts in this case. Because of the case's procedural posture, we do not have the record. For our summary of the relevant facts and procedural history, we have relied upon the orders entered by the federal district court and the opinion filed by the Court of Appeals for the Sixth Circuit in this matter, together with copies of Plaintiff's judgment orders of conviction.

2. Eight years was the minimum sentence available for aggravated robbery, a Class B felony, which was the most serious of Plaintiff's convictions. *See* Tenn.Code Ann. §§ 40–35–111(b)(2) (1997); 39–13–402(b) (1997).

Plaintiff then approached Sue Barnes, Chief Jailer for the Carroll County jail, about his release date. Barnes attested by affidavit that she contacted Tennessee Board of Probation and Parole ("TBPP") officer Jeff Barnett on several occasions to try to resolve the issue, but never received a satisfactory response.[3] Accordingly, Plaintiff's one year anniversary date passed on July 10, 2003, with no prospect of his release.

After months of inactivity, on February 11, 2004, Plaintiff's family retained counsel to investigate the situation. On February 12, 2004, Donna Meggs, an employee of retained counsel, contacted Barnes and obtained Plaintiff's jail records. Meggs attested by affidavit that those records consisted of (1) a copy of the judgments, which reflected a split sentence of one year and jail credit back to July 10, 2002; (2) the jail roster, which noted a sentence of one year and a beginning date of July 10, 2002; (3) the letter from Amber Phillips of the TDOC; and (4) the written inquiries previously made by Plaintiff. Meggs then spoke with TBPP officer Barnett, who advised her that the TDOC had no involvement with split sentence release dates. On February 13, 2004, Meggs spoke with Terry Dickey, Chief Deputy of the Carroll County Sheriff's Department, and informed him of her conversation with Barnett in which Barnett had indicated that local jail officials were responsible for calculating Plaintiff's release date.

Both Chief Deputy Sheriff Dickey and Chief Jailer Barnes attested by affidavit that they spoke with each other on February 13, 2004, about the release date for Plaintiff. Dickey attested that after speaking with Barnes, he contacted Jeff Barnett at "TDOC."[4] Barnes attested that Barnett contacted her on that same day and told her that Plaintiff had served his time and to release him. Plaintiff was released that day.

Plaintiff filed this 42 U.S.C. § 1983 action in the United States District Court for the Western District of Tennessee, Eastern Division, on February 10, 2005. The complaint alleged that Defendants Carroll County, Tennessee, and Sheriff Bartholomew, in both his individual and official capacity, violated Plaintiff's federal constitutional rights by causing him to remain incarcerated beyond his release date. Neither Sue Barnes, Jeff Barnett, Terry Dickey, Amber Phillips, nor the TDOC were named as defendants in the lawsuit.

Both Plaintiff and Defendants filed motions for summary judgment. On May 26, 2006, the District Court granted Sheriff Bartholomew's and Carroll County's motions for summary judgment, denied Plaintiff's motion for summary judgment, and entered judgment in favor of Sheriff Bartholomew and Carroll County. The court found that Plaintiff had failed to produce any evidence that either Sheriff Bartholomew or Carroll County "caused" his unlawful detention and concluded that

no official or employee at the Carroll County Jail or in the Carroll County Sheriff's Department had unilateral discretion either to "calculate" [Plaintiff's] "sentence expiration" and "release" date or to determine that [Plaintiff] could be released without instructions either from

---

3. The record does not indicate why Barnes did not contact the TDOC. The TBPP is an independent board that determines, monitors and assists offenders who may safely be supervised in the community as opposed to being incarcerated for the full term of their sentence with the TDOC. *See* Tenn.Code Ann.

§ 40–28–101 through–505 (2006). The TBPP's powers do not relate to maintenance of incarceration service records.

4. As noted earlier, Barnett was an employee of the TBPP, not the TDOC.

a judge or from someone at the state department of correction.

Furthermore, although the court recognized that a jailer might have some obligation to investigate a claim of illegal detention, it noted that there was no evidence in the record that Sheriff Bartholomew knew of or participated in the inquiries and investigations regarding Plaintiff's or any other inmate's release date. Also absent was any evidence that Carroll County had a particular "policy" in this area.

Plaintiff appealed to the United States Court of Appeals for the Sixth Circuit. The Sixth Circuit noted the three elements of a proper claim under 42 U.S.C. § 1983: (1) the violation (2) of a right secured by the Constitution and laws of the United States (3) committed by a person acting under color of state law. *Shorts v. Bartholomew*, 255 Fed.App'x 46, 51 (6th Cir. 2007). The court determined that Plaintiff's claim properly alleged a violation—that he was incarcerated beyond his release date. *Id.* Further, the court acknowledged established case law holding that when a prisoner's sentence has expired, he is entitled to release. *Id.* Finally, the court held that the third element—that the violation was committed by a person acting under color of state law—was "beyond dispute." *Id.* at 52. The latter finding rested on the language of the statute at issue in this Rule 23 appeal, that "[i]t is the sheriff's duty to ... [t]ake charge and custody of the jail of the sheriff's county, and of the prisoners therein; receive those lawfully committed, and keep them personally, or by deputies or jailer, until discharged by law...." Tenn.Code Ann. § 8–8–201(a)(3) (Supp.2008).[5] *See also* Tenn.Code Ann. § 8–8–221(a) (2002)

(providing that, except for state prisoners held in the county jail, "no person shall be incarcerated in the county jail without the approval of the sheriff, or the sheriff's designee, subject to approval of the court having criminal jurisdiction over the sheriff's jurisdiction"). The court concluded that "the Sheriff is the final policymaker over the operation of the jail." *Shorts*, 255 Fed.App'x at 52 (citing *Heflin v. Stewart County*, 958 F.2d 709, 713 (6th Cir.1992)).

Plaintiff alleged two alternate theories of recovery: either that Sheriff Bartholomew directly caused the harm, or that Sheriff Bartholomew failed to prevent the harm by his deliberate indifference to the risk that prisoners would be unlawfully detained beyond the period of their adjudged incarceration. After analyzing Plaintiff's theories of recovery, the Court of Appeals for the Sixth Circuit upheld the District Court's grant of summary judgment as to the suit against Sheriff Bartholomew in his individual capacity. The court agreed there was no evidence that Sheriff Bartholomew was directly or personally involved in Plaintiff's imprisonment, or even aware of Plaintiff's presence at the jail. *Id.* at 53–55.

The court also concluded, however, that the District Court erred in granting summary judgment to Carroll County with regard to Plaintiff's allegation against the Carroll County Sheriff in his official capacity. The court reiterated that under Tennessee Code Annotated section 8–8–201(a)(3), the sheriff has a duty to care for the prisoners under his watch. *Id.* at 59. The court reasoned that this duty, superimposed with an inmate's liberty interest in being released at the end of the term of imprisonment, includes a duty to follow minimum due process to ensure that a

---

**5.** This is the statutory designation referred to by the federal courts. In 2003, the designation was section 8–8–201(3). *See* Tenn.Code Ann. § 8–8–201(3) (2002). The language remains the same.

prisoner's liberty is not arbitrarily abrogated. *Id.* Noting that there was no evidence in the record that any procedure existed to insure timely release of inmates, the court concluded that a valid jury question remained over whether Sheriff Bartholomew had failed to implement the procedures necessary to protect Plaintiff's right to due process. *Id.* at 60. Accordingly, the court reversed the grant of summary judgment on this issue and remanded to the District Court for "further proceedings consistent with this opinion." Upon remand, the District Court certified one question of law to this Court: "What duty, if any, does Tenn.Code Ann. § 8–8–201(a)(3) impose upon a Tennessee sheriff to calculate the release date and order the release of a TDOC prisoner who is serving his period of incarceration in a county jail?"

## II. Standard of Review

■ We accepted this certification by order filed on May 27, 2008, pursuant to Tennessee Supreme Court Rule 23, which provides as follows:

> The Supreme Court may, at its discretion, answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a District Court of the United States in Tennessee, or a United States Bankruptcy Court in Tennessee. This rule may be invoked when the certifying court determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee.

Tenn. Sup.Ct. R. 23, § 1. We review questions of law under a de novo standard with no presumption of correctness. *Colonial Pipeline Co. v. Morgan,* 263 S.W.3d 827, 836 (Tenn.2008).

■ The certified question before us involves issues of statutory construction, which we consider under familiar rules. We are first and foremost "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State,* 908 S.W.2d 923, 926 (Tenn.1995). We determine the General Assembly's intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *State v. Flemming,* 19 S.W.3d 195, 197 (Tenn.2000). "[I]f the language of a statute is clear, we must apply its plain meaning without a forced interpretation." *Calaway ex rel. Calaway v. Schucker,* 193 S.W.3d 509, 514 (Tenn. 2005). "If, however, the plain language of a statute is ambiguous, the Court will look beyond the statutory language to determine the legislature's intent." *State v. Strode,* 232 S.W.3d 1, 12 (Tenn.2007).

## III. Analysis

Although this matter has arisen in the context of a federal civil rights action filed under 42 U.S.C. § 1983, the question posed has revealed what we believe to be a lack of statutory clarity about the relative responsibilities of state and county officials to (1) calculate the sentences of prisoners sentenced under different statutory provisions and (2) release prisoners when their sentences are complete. While numerous Tennessee Code sections refer to the calculation of release eligibility dates, sentence credits, and the authority of the trial court to make adjustments to a sentence,[6]

---

6. *See, e.g.,* Tenn.Code Ann. §§ 40–35–212,– 303(e),–314,–501 (2006); 41–2–111,–123,–149

not all of them assign responsibility for the calculation of credits under each type of sentence or for the release of a prisoner at the appropriate time.

The parties in this case, and the State of Tennessee as amicus curiae, have each argued forcefully for different statutory or policy solutions to this conundrum. Our research reveals that neither of the parties nor the State is completely accurate in its position, in part because there are gaps and inconsistencies in the sentencing statutes as they currently exist. Careful analysis of the relevant statutes is necessary to resolve the problem.

### A. Plaintiff's Status as a Prisoner of the TDOC or the County Jail

Initially, we must note that the District Court's certified question incorrectly presumes Plaintiff's status as a "TDOC prisoner." Plaintiff's counsel conceded this drafting error during oral argument. The District Court's erroneous presumption is based upon Plaintiff's erroneous judgment orders. Those orders for Plaintiff's felony convictions indicate on their face that Plaintiff was sentenced "to TDOC." The problem is that the Tennessee Criminal Sentencing Reform Act of 1989, Tenn.Code Ann. §§ 40–35–101 through—505 (2006) ("the Sentencing Act"), under which Plaintiff was sentenced, does not provide for Plaintiff's felony sentences to be served in the TDOC.

The Sentencing Act provides for the following sentencing alternatives for felony sentences: continuous confinement (in either the TDOC or a local jail or workhouse), periodic confinement (in a local jail or workhouse), fines, probation, work release, community-based corrections, or a combination of these options. Tenn.Code Ann. § 40–35–104(c). Relevant to this

(2006).

case, section 40–35–306(a) of the Sentencing Act provides for the option of split confinement, or so-called "shock probation," wherein an offender is required to serve a period of continuous confinement of up to one year in a local jail or workhouse before being placed on probation. The Sentencing Act expressly states that for a sentence of eight years or less that is combined with split confinement not exceeding one year-the sentence imposed on Plaintiff—"the court *shall* designate the place of confinement as a local jail or workhouse." *Id.* § 40–35–314(a) (emphasis added).

Thus, the trial court erred when it designated on Plaintiff's judgment orders that he was sentenced to the TDOC. This erroneous designation is a significant cause of the confusion in this case. Although the standard judgment form in use at the time provided an option for sentencing an offender to the county jail or workhouse, with a corresponding option of designating a period of incarceration to be served prior to release on probation, the trial court erroneously checked the box next to "TDOC" in spite of also checking the box next to "Probation" with a notation "supervised after serv[ice of] 1 year." The erroneously marked TDOC box notwithstanding, it is clear that Plaintiff received a split confinement sentence as provided for in Tennessee Code Annotated section 40–35–306(a). Therefore, as provided by section 40–35–314(a), his designated place of confinement was the county jail or workhouse. Accordingly, we conclude that Plaintiff was not a TDOC prisoner. *See State v. Sutton,* 166 S.W.3d 686, 690 (Tenn.2005) (disregarding trial court's erroneous designation on judgment order that defendant was sentenced to the TDOC when actual sentence imposed was to community corrections).

## B. Duty of a Tennessee Sheriff to a TDOC Prisoner

Although it appears that the certified question as posed misconstrues Plaintiff's status as a TDOC prisoner, as a courtesy to the District Court and for the future reference of the federal courts, we will endeavor to answer the narrow question asked, to wit: What duty, if any, does Tennessee Code Annotated section 8–8–201(a)(3) impose upon a Tennessee sheriff to calculate the release date and order the release of a TDOC prisoner who is serving his period of incarceration in a county jail?

To begin, we address what appears at first blush to be a contradiction in terms: that category of inmates who are TDOC prisoners yet confined in a local jail. We must look to numerous and scattered statutes to discover the members of this category.

Generally speaking, a trial court must sentence felony offenders serving continuous time in confinement to incarceration in the TDOC.[7] *See* Tenn.Code Ann. §§ 40–35–104, Sentencing Comm'n Cmts; 40–35–212, Sentencing Comm'n Cmts; 40–35–314(a). Counties may choose, however, to enter into contracts with the TDOC to house certain felony offenders in the local jail or workhouse. *Id.* § 40–35–104(b). In that event, the sheriffs of those counties will have in their custody felony offenders who are serving a total sentence of one to three years or, in the case of a contracting county meeting certain population criteria, a total sentence of one to six years. *Id.* In addition to this group of defendants, some defendants sentenced to serve their confinement in the TDOC are temporarily housed in local facilities while awaiting transfer to a TDOC institution. *See id.* § 40–35–212(d). With respect to any of

these defendants, whom we will refer to for the purposes of this opinion as "TDOC prisoners," is the sheriff obligated to calculate the release date or to order the defendant's release?

Defendant Sheriff Bartholomew asserts that Tennessee Code Annotated section 8–8–201(a)(3) imposes no such duty upon a Tennessee sheriff. Instead, he contends, the TDOC is the responsible entity. Defendant relies partly on the principles of "Dillon's Rule" to argue that, without an express statutory grant, the sheriff has no authority to calculate release dates or order release of TDOC prisoners housed in local jails. Dillon's Rule, a common law canon of statutory construction propagated by Iowa Supreme Court Justice John F. Dillon over 100 years ago, stands for the principle that local governments possess and can exercise only (1) powers granted in express words; (2) powers necessarily or fairly implied in or incident to the powers expressly granted; and (3) powers essential to the accomplishment of the declared objects and purposes of the entity—not simply convenient, but indispensable. *See* 1 John F. Dillon, *A Treatise on the Law of Municipal Corporations* §§ 237–239 (5th ed.1911); *see also* Gerald E. Frug, *The City as a Legal Concept*, 93 Harv. L.Rev. 1059, 1109–16 (1980) (describing Dillon's Rule and its dominance in contemporary legal thought). Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the local entity, and the power is denied.

With Dillon's Rule in mind, we resort to an examination of the statute in question under accepted principles of statutory construction. First, it is without

---

**7.** As set forth above, felony offenders sentenced to split confinement are an exception to this rule.

question that the sheriff is a constitutional officer and the Tennessee Constitution grants such officers the control of the county jail and the custody of prisoners. Tenn. Const. art. VII, § 1; *State v. Cummins*, 99 Tenn. 667, 42 S.W. 880, 883 (1897). However, the specific duties and powers of the sheriff are provided by statute. Indeed, there are many statutes, section 8–8–201 included, that purport to set out the various powers and duties of the sheriff. *See* Tenn.Code Ann. § 8–8–201(b)(1) (listing other statutes that set forth additional duties of the sheriff).

 We assume that whenever the legislature enacts a provision, it is aware of other statutes relating to the same subject matter. *Wilson v. Johnson County*, 879 S.W.2d 807, 810 (Tenn.1994). Unless the newer statute expressly repeals or amends the old one, the new provision is presumed to be in accord with the same policy embodied in the prior statutes; thus, "statutes 'in pari materia'—those relating to the same subject or having a common purpose—are to be construed together, and the construction of one such statute, if doubtful, may be aided by considering the words and legislative intent indicated by the language of another statute." *Id.* at 809. If a conflict exists, specific statutory provisions will be given effect over conflicting general provisions. *Arnwine v. Union County Bd. of Educ.*, 120 S.W.3d 804, 809 (Tenn.2003). Statutes on the same subject, although in apparent conflict, are construed to be in harmony if reasonably possible. *In re Akins*, 87 S.W.3d 488, 493 (Tenn.2002).

The statute at issue in this case, section 8–8–201, provides that "(a) [i]t is the sheriff's duty to: ... (3)[t]ake charge and custody of the jail of the sheriff's county, and of the prisoners therein; receive those lawfully committed, and keep them personally, or by deputies or jailer, until dis-

charged by law." The direction to "[t]ake charge and custody of the jail ... and of the prisoners therein ... and keep them ... until discharged by law" is general and could be interpreted broadly. *See also* Tenn.Code Ann. § 41–4–101 (2006) ("The sheriff of the county has, except in cases otherwise provided by law, the custody and charge of the jail of the county, and of all prisoners committed thereto, and may appoint a jailer, for whose acts the sheriff is civilly responsible."). However, the language of the statute does not expressly confer a duty on the sheriff to calculate release dates or order release of TDOC prisoners housed locally. Nor, despite a diligent search, are we able to find any other statute that does so. Accordingly, we examine the Tennessee Code to determine if some entity other than the sheriff is responsible for keeping up with release dates and ordering release of TDOC prisoners housed in a jail or workhouse.

Initially, we find it helpful to consider the meaning of "release date." As part of Tennessee's sentencing scheme, most defendants convicted of felonies and sentenced to confinement are entitled to either automatic early release or consideration for early release upon attaining their "release eligibility date." *See* Tenn. Code Ann. § 40–35–501. More specifically, those defendants serving in confinement a felony sentence of two years or less "shall have the remainder of their original sentence suspended upon reaching their release eligibility date." *Id.* § 40–35–501(a)(3). Release of this category of offender is actually to probation, not parole, for the portion of sentence left unserved.

Inmates serving longer sentences are treated differently. Rather than the remainder of their sentence being suspended automatically upon reaching their release eligibility date, most TDOC prisoners serv-

ing a sentence of longer than two years in confinement become eligible for parole at that time.[8] Subsections 40–35–501(b) through (f) provide for release eligibility depending on the offender's status as a mitigated, standard, multiple, persistent, career or repeat violent offender. A "release eligibility date" is assigned depending on the percentage of the sentence required to be served, less any sentence credits ("good time credit") earned and retained by the prisoner. *Id.* For instance, the release eligibility date for a defendant convicted of robbery and sentenced as a Range I standard offender "shall occur after service of thirty percent (30%) of the actual sentence imposed less sentence credits earned and retained by the defendant." *Id.* § 40–35–501(c). Thus, a defendant sentenced as a Range I standard offender to eight years, the sentence imposed on Plaintiff in this case for his aggravated robbery conviction, would be eligible for parole consideration upon serving a maximum of 2.4 years.

"The release eligibility date provided for in this section is the earliest date an inmate convicted of a felony is eligible for parole." Tenn.Code Ann. § 40–35–501(k).[9] Early release for these prisoners is not automatic; rather, whether an inmate who becomes eligible for parole is actually released on parole is a decision entrusted to the sole discretion of the TBPP, an entity independent of the TDOC. Title 40, Chapter 28, of the Tennessee Code ("Chapter 28") sets forth the provisions creating and governing the TBPP and also sets out the procedures by which the TBPP makes its parole determinations. Particularly relevant to this case, one section of Chapter 28 provides:

> Notwithstanding any other provision of the law to the contrary, the department of correction shall be responsible for calculating the sentence expiration date and the earliest release date of any felony offender sentenced to the department of correction and any felony offender sentenced to confinement in a county jail or workhouse for one (1) or more years.[10]

Tenn.Code Ann. § 40–28–129. Thus, although the TBPP is responsible for making the decision of whether or not to grant parole to an eligible inmate, it is the TDOC that is responsible for determining whether a parole-eligible defendant has reached that point of time at which he may be considered for release on parole.

The TDOC's responsibility in this regard is echoed in provisions of the Sentencing Act. Tennessee Code Annotated section 40–35–501(o)[11] provides that, "[n]otwithstanding any other provision of the law to the contrary, the [TDOC] is responsible for calculating ... the release eligibility date of any felony offender sentenced to the [TDOC] and any felony of-

---

**8.** Offenders who commit certain enumerated crimes are not eligible for early release on parole. See Tenn.Code Ann. § 40–35–501(g), (h)(2), & (i)-(k) (Supp.2008).

**9.** This provision has been redesignated subsection (m). Tenn.Code Ann. § 40–35–501(m) (Supp.2008).

**10.** We recognize that, taken out of context, the language of this provision could be construed to apply to defendants sentenced to serve one year on split confinement. However, section—129 is contained in the chapter of the Tennessee Code dealing with parole. Release on parole by the TBPP is a different animal entirely than release on probation by order of a trial court, which is what occurs in a sentence of split confinement. We decline to construe section—129 in a manner that conflates these two distinct manners of release.

**11.** This provision has been redesignated subsection (q). Tenn.Code Ann. § 40–35–501(q) (Supp.2008).

fender sentenced to confinement in a local jail or workhouse for one (1) or more years." *See also* Tenn.Code Ann. § 40–35–501(a)(4) (providing that no prisoner may be released under section–501 by the holding institution (including jails) until "at least ten (10) days after receipt of all sentencing documents by the [TDOC] and ten (10) days after the [TDOC] has sent notice of the release eligibility dates to the district attorney general and the appropriate sheriff, jail administrator, workhouse superintendent or warden").

▮▮▮ Reading Chapter 28 and the Sentencing Act *in pari materia*, in the case of TDOC prisoners, regardless of where they are actually confined, it is clear that it is the TDOC's responsibility to determine sentence expiration dates and release eligibility dates. Tenn.Code Ann. § 40–35–501(*o*); *see also* § 41–21–236 (Supp.2008) (addressing sentence reduction credits for inmates committed to the custody of the TDOC). It is the TBPP's responsibility to decide whether to actually grant parole and to thereafter supervise the parolee. *See generally* Tenn.Code Ann. §§ 40–28–101 through—505.

The language in these Code sections is clear: the TDOC is responsible for calculating sentence expiration dates and the earliest release dates for TDOC prisoners. These specific provisions control over the general provision in section 8–8–201(a)(3) assigning duties over the jail to the sheriff. The express provisions for the TDOC to calculate these release dates absolves the sheriff of responsibility to calculate the dates for such prisoners. Indeed, it appears that the sheriff is not authorized to

release a TDOC prisoner until notified by the TDOC to do so.[12]

▮▮▮ We therefore conclude that the TDOC is responsible for calculating release eligibility dates for TDOC prisoners, regardless of where they are actually confined. Because these express statutory provisions unambiguously place this responsibility on the TDOC's shoulders, we deem it unwise to construe section 8–8–201(a)(3) so broadly as to place a duplicate responsibility on sheriffs. Accordingly, we agree with Defendant Sheriff Bartholomew that Tennessee Code Annotated section 8–8–201(a)(3) imposes no duty upon a Tennessee sheriff to calculate the release date or order the release of a TDOC prisoner serving time in the county jail.

### C. Duty to Calculate Release Date for Sentences of Split Confinement

As noted above, however, Plaintiff was not a TDOC prisoner. His judgment orders clearly reflect sentences to split confinement or "shock probation," i.e., probation following a specific period (one year or less) of confinement. The language in the sections of the Sentencing Act cited above must be read *in pari materia* with the other statutory provisions expressly addressing split confinement sentences. Thus, we perceive the pertinent question for the federal court in this case to be whether Tennessee Code Annotated section 8–8–201(a)(3) imposes any duty upon a Tennessee sheriff to calculate the release date and order the release of a prisoner

---

12. There are other statutes that, by placing a duty upon a sheriff to transmit certain information to the TDOC, imply the information will be used by the TDOC to determine a prisoner's status. *See, e.g.,* Tenn.Code Ann. § 40–23–113 (2006) (imposing a duty on the sheriff, for prisoners sentenced to the TDOC, to prepare and transmit a report to the TDOC of the prisoner's behavior while in local custody). Under the statutory scheme discussed above, such information would presumably be used by the TDOC to calculate "good time credits."

sentenced to serve a split confinement sentence.[13]

Appearing as amicus curiae, the State asserts in its brief that a sheriff has the responsibility for calculating all sentences of split confinement. At oral argument, counsel for the State asserted that this responsibility is well known and accepted by (almost) all sheriffs. However, the State has not cited us to any specific statutory authority actually supporting this proposition. Rather, the State analogizes to Tennessee Code Annotated section 40–35–307(d), which provides that, with respect to sentences of *periodic* confinement up to one year,[14] "[t]he sheriff, warden, superintendent or other official having responsibility for the safekeeping of the defendant in any local jail or workhouse shall adopt procedures for the release of the defendant at the time specified in the order of judgment."[15] Subsection—307(d) is not applicable to the facts of this case, which deals with split confinement. The statute dealing with split confinement, Tenn.Code Ann. § 40–35–306, does not contain an analogous provision.

In spite of a diligent search, we have not found any express statutory provision regarding who bears the responsibility for calculating the release date of a defendant sentenced to serve a period of confinement pursuant to a sentence of split confinement. This omission is puzzling and doubtless accounts for some of the confusion in the arguments made both to the District Court and to this Court. Clearly someone must be held accountable for this very important responsibility. We therefore consider whether section 8–8–201(a)(3) or any other statute imposes that responsibility on the sheriff for these sentences.

 Split confinement sentences are, by definition, different from sentences of continuous confinement-technically, they are probated sentences. *See* Tenn.Code Ann. §§ 40–35–306; 40–35–314(a), Sentencing Comm'n Cmts. Prisoners serving such sentences are limited to continuous confinement of no more than one year in a county jail or workhouse, followed by probation. *Id.* § 40–35–306(a). Accordingly, prisoners serving a split confinement sentence are not assigned a release eligibility date and do not qualify for parole.[16] In such circumstances, the TDOC does not become involved. In fact, any release eligibility date determined by the TDOC would be meaningless for a prisoner serv-

---

13. In conjunction with our inherent power and responsibility to answer questions certified to us pursuant to Rule 23, *see Haley v. Univ. of Tenn.-Knoxville*, 188 S.W.3d 518, 523 (Tenn.2006), we exercise our discretion to reframe the Rule 23 certified question before us so as to provide the guidance actually sought. *See generally*, 17A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Vikram David Amar, *Federal Practice and Procedure*, Jurisdiction 3d § 4248 n. 67 and accompanying text (Westlaw 2009).

14. Tennessee Code Annotated section 40–35–307 "permits ... incarceration on alternative periods of time, such as, for example, every other weekend." Tenn.Code Ann. § 40–35–307, Sentencing Comm'n Cmts. Periodic confinement is distinct from split confinement.

15. Tennessee Code Annotated section 40–20–117(b) (2006) contains virtually identical language, but it also applies only to periodic confinement and to confinement for not more than eleven months, twenty-nine days. In this case, Plaintiff was sentenced to one year of confinement.

16. This status may change. A convict who, after serving the sentence of split confinement and being placed on probation, thereafter violates the conditions of probation, may have his or her probation revoked and thereafter be ordered to serve in the TDOC the sentence originally imposed. Tenn.Code Ann. § 40–35–306(b) & –314(a).

ing a sentence of split confinement because under the statutory scheme addressing eligibility for parole, no person shall be released before serving at least one year. Tenn.Code Ann. § 40–28–115(b). In this case, Plaintiff was effectively sentenced as a Range I standard (30%) offender to eight years imprisonment. Without the provision for split confinement, his earliest release eligibility date would have been after service of 2.4 years (less credits), far beyond the time mandated by the judgment. *See* Tenn.Code Ann. § 40–35–101, Sentencing Comm'n Cmts (Sentence Ranges & Release Eligibility chart).

■ Although the language of section 8–8–201(a)(3) is broad, it does not expressly impose a duty upon the sheriff to calculate release dates and order release of prisoners.[17] We note, however, that subsection (a)(1) of that same statute expressly lists as a duty of the sheriff that the sheriff *"[e]xecute* and return, according to law, the process and *orders of the courts of record of this state,* and of officers of competent authority, with due diligence, when delivered to the sheriff for that purpose." Tenn.Code Ann. § 8–8–201(a)(1) (Supp. 2008)[18] (emphases added). Under this subsection, a sheriff has the duty to see that the orders of the courts, including judgment orders, are enforced.

Additionally, local jailers or superintendents have the duty, under several statutes, to determine any sentencing credits earned by a defendant serving a sentence of split confinement. *See, e.g.,* Tenn.Code Ann. §§ 41–2–145,—146, and—147 (2006).

Since those must be granted and calculated locally, it is reasonable to repose all calculation responsibilities on the local jailer or superintendent.

Other courts have similarly interpreted a sheriff's general statutory duty to keep and maintain prisoners as including a duty to effect their timely release. *See, e.g., Whirl v. Kern,* 407 F.2d 781, 792 (5th Cir.1969) (construing a Texas sheriff's statutory duty to keep safely prisoners committed to the jail by court order as including "the duty to effect [a prisoner's] timely release") (citing Tex.Rev.Civ. Stat. Ann. art. 5116 (Vernon 1962), now codified at Tex. Loc. Gov't Code Ann. § 351.041 (Vernon 2005)). Similarly, the District Court for the Northern District of Mississippi has interpreted the Mississippi statutory provisions imposing general duties on sheriffs as conferring a duty to hold in the county jail "only those persons who are lawfully imprisoned." *Hollands v. Attala County,* No. Civ. A. 1:94CV206DD, 1995 WL 1945442, at *3 (N.D.Miss. Aug.1, 1995). The *Hollands* court further stated that "[i]n order to properly execute these statutory duties, the sheriff is necessarily required to determine if and when that prisoner is to be released in accordance with the order of commitment." *Id.*

■ Accordingly, we conclude that the language of Tennessee Code Annotated section 8–8–201(a)(1) & (3) imposing duties on a sheriff to "[e]xecute and return, according to law, the process and orders of the courts of record of this state," and to

---

**17.** The exception is for counties in which the jail has been declared a workhouse, in which case the sheriff is deemed the superintendent of that workhouse. Tenn.Code Ann. § 41–2–108 (2006). In such cases, section 41–2–109 lists the workhouse superintendent's duties for the care of prisoners and provides that "[i]t is the duty of the superintendent to: (1) Discharge each prisoner as soon as the pris-

oner's time is out...." *Id.* § 41–2–109(1) (2006). There is no similar provision for the sheriff of the jail. The record before us does not indicate whether the Carroll County jail has been declared a workhouse.

**18.** Previously designated section 8–8–201(1). *See* Tenn.Code Ann. § 8–8–201(1) (2002).

"[t]ake charge and custody of the jail ... and of the prisoners therein; receive those lawfully committed, and keep them personally, or by deputies or jailer, until discharged by law," includes a duty to note the confinement period designated on a judgment order of split confinement involving continuous confinement for a period of one year or less, determine and apply sentence credits, if any, calculate the release date, and release a prisoner at the appropriate time.

## CONCLUSION

Like the participants in this case, we believe the existing statutes are inconsistent and overlapping, while at the same time leaving gaps concerning the responsibility for sentence calculation and release in all situations. Nevertheless, we answer the District Court's certified question by holding that Tennessee Code Annotated section 8–8–201(a)(3) does not impose a duty upon a Tennessee sheriff to calculate the release date and order the release of a TDOC prisoner. The statute does, however, impose a duty upon a Tennessee sheriff to enforce the terms of a judgment ordering a sentence of split confinement. This duty includes noting the term of confinement provided for in the judgment order, crediting the prisoner for time served as indicated on the judgment order, calculating any credits that may be earned, and timely releasing the prisoner at the conclusion of the period of confinement ordered.

The costs of this appeal are taxed to Plaintiff and Defendant equally, for which execution may issue, if necessary.

