IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 12, 2016

## RAYGAN L. PRESLEY v. GRADY PERRY, WARDEN

**Appeal from the Circuit Court for Hardeman County
No. 2015-CR-190      Joe H. Walker, III, Judge**

_____

**No. W2016-00182-CCA-R3-HC  -  Filed July 25, 2016**

_____

In 2008, a Warren County jury convicted the Petitioner, Raygan L. Presley, of three counts of aggravated sexual battery, and the trial court sentenced the Petitioner to an effective sentence of twenty-two years, to be served at 100%. Upon review, this Court ordered that all the sentences run concurrently, for a total effective sentence of eleven years, to be served at 100%. *See State v. Raygan L. Presley*, No. M2007-02487-CCA-R3-CD, 2008 WL 3843849, at *1 (Tenn. Crim. App., at Nashville, Aug. 18, 2008), *no Tenn. R. App. P. 11 application filed*. In December 2015, the Petitioner filed a petition for habeas corpus relief alleging that his sentence had expired. He asserted that, in addition to the pretrial jail credits, he had earned 140 days of behavior credits and 492 days of program credits, meaning that his sentence expired on November 1, 2015. The habeas corpus court summarily dismissed the petition, finding that the face of the judgments did not show that his sentence had expired and that he must pursue relief pursuant to the Administrative Procedures Act. On appeal, the Petitioner contends that the trial court erred when it dismissed his petition. After review, we affirm the habeas corpus court's judgment.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Raygan L. Presley, Henning, Tennessee, pro se.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; and D. Mike Dunavant, District Attorney General, for the appellee, State of Tennessee.

**OPINION
I. Facts**

A Warren County jury convicted the Petitioner of three counts of aggravated sexual battery. In our opinion on the Petitioner's direct appeal, we summarized the facts presented at trial as follows:

> The convictions emanate from charges that the [Petitioner] had sexual contact in 2002 with the victim, his stepdaughter who was born April 25, 1995.

> At trial, the victim's mother, who was married to the [Petitioner] in 2002, testified that in June 2002 the victim told her that the [Petitioner] had sexually assaulted her. The victim's mother testified that she took the victim to a physician to be examined. She then forced the [Petitioner] to leave the marital home but did not immediately seek intervention by the authorities.

> The victim, who was 12 years old at the time of the 2007 trial, recounted that after watching a scary movie one night in the summer following her first-grade year in school, she had nightmares and went to her mother's bed, which her mother shared with the [Petitioner]. In the morning, the victim's mother rose before the [Petitioner] to go to work. The victim testified that after her mother left for work, the [Petitioner] started "tickling" her. She laughed, and then he "tickled [her] between the legs." The victim testified that she stopped laughing and "moved away." She testified that the [Petitioner] apologized and told her that if she were going to tell about the touching, he would leave the home.

> On a second night when nightmares prompted the victim to go to her mother's bed, she was awakened the next morning by the [Petitioner] touching her "between the legs." She testified that the [Petitioner] was "rubbing" her "private part." The victim cried and retreated to her room. She testified that the [Petitioner] followed her and told her that "if [she] told anybody that [she] was going to start a fire and that it was going to be very hard to put it out."

> The victim testified that the third assault occurred when the [Petitioner] came to the victim's bedroom one morning after the victim's mother had gone to work. She testified that the [Petitioner] "got under [her] covers and [her] started touching me again." She testified that the [Petitioner] put his hand "down [her] pants."

2

The victim testified that soon after this third incident, she told her mother about the abuse and was taken to the doctor for an examination.

Doris Denton, an employee of the Tennessee Department of Children's Services who held a master's degree in psychology and had been trained to deal with child sexual abuse, testified that she spoke with the [Petitioner] in 2002 after the [Petitioner] called for an appointment. The [Petitioner] told Ms. Denton that his stepdaughter had accused him of touching her in her "woman spot." Ms. Denton testified that the [Petitioner] said "he might have done it. He didn't know. The only explanation could have been when he was sleeping."

Ms. Denton then went to the victim's school to interview the victim. Ms. Denton testified that the victim told her that the [Petitioner] had touched her on her private part. On cross-examination, Ms. Denton agreed that the victim did not tell her about the [Petitioner's] "tickling" her or about the [Petitioner's] assaulting the victim in her bedroom.

Stan Marlar, a private investigator, testified for the State that the [Petitioner] came to him on July 26, 2002, and stated that his wife had accused him of having a sexual affair with a mutual friend of theirs, whose given name as told by the [Petitioner] is the same name as the victim's. Mr. Marlar testified that the [Petitioner] admitted having sex with this individual, using the same name as the victim's given name. Mr. Marlar testified that the [Petitioner] did not mention that the person to whom he had referred was a minor or was his stepdaughter.

Jason Rowland, a Warren County deputy sheriff, testified that he was an investigator with the district attorney general's office when he interviewed the [Petitioner]. He testified that the [Petitioner] initially denied any improper contact with the victim but that later in the interview, when asked whether he could have touched the victim accidentally, the [Petitioner] acknowledged that he could have done so. Deputy Rowland testified that the [Petitioner] said, "[I]f [the victim] said I did this, I probably did it." Otherwise, Deputy Rowland testified on cross-examination, the [Petitioner] denied any improper touching of the victim.

Doctor Jack Rhody, a Smithville physician, testified on behalf of the [Petitioner] that he examined the victim on June 15, 2002. Doctor Rhody testified that the victim's mother related to him that an examination was needed because the victim's stepfather had been touching her. The history

3

related by the victim recounted no "rubbing" of her vagina, and the physical examination of the victim revealed no indication that she had been vaginally assaulted.

Based upon the foregoing evidence, the jury convicted the [Petitioner] of three counts of aggravated sexual battery.

*Presley*, 2008 WL 3843849, at *1-3. The trial court ordered the Defendant to serve an eleven-year sentence on each conviction, at 100%, and it ordered that two of the sentences run consecutively, for a total effective sentence of twenty-two years. The Petitioner appealed, and this Court affirmed the judgments but reversed the consecutive sentences, making the Petitioner's total effective sentence eleven years, at 100%. *Id.* at *8-9.

The Petitioner filed a petition for habeas corpus relief on December 22, 2015, in which he alleged that his sentence had expired. The Petitioner noted, and the judgments of conviction confirm, that the trial court entered the judgments on December 19, 2008, and sentenced the Petitioner to eleven years, at 100%. All of the judgment forms indicate that the Petitioner received jail credit for the following time periods: September 24, 2002 to July 11, 2003; and May 1, 2007 to June 27, 2007, totaling 348 days of jail credit. The Petitioner further asserted that he earned 140 days of good behavior credits and 492 days of program credits, making the expiration of his sentence effective November 1, 2015. He notes that he contacted the Tennessee Department of Correction ("TDOC") regarding this matter, and he attached its response. TDOC's response to his inquiry, dated January 9, 2015, is included in the record and states:

The judge did not award you any pretrial jail credits on case #F9236 ct. 2. That is why your expiration is 2016. Also ct. 3 of that case was not awarded any pre-trial jail credits. So therefore time is correct.

The Petitioner correctly contended that this information is inaccurate and that the trial court awarded him jail credit on each of his three convictions. He further attached a TOMIS report that he asserts shows that he earned sentence reduction credits totaling 632 days.

The habeas corpus court summarily dismissed the Petitioner's petition for habeas corpus relief. In so doing, it stated, "If Petitioner is alleging that he has not received proper credit for time served, then the proper method for the [P]etitioner to challenge his time credits or parole dates is through the avenues of the Uniform Administrative Procedures Act." It stated that it was in "no position to attempt to determine proper sentence credits." The habeas corpus court further noted that the "Petitioner's sentence

under which he is being held has not expired on its face. The Criminal Court has jurisdiction or authority to sentence a defendant to the sentence he received."

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that his sentence expired on October 21, 2015, considering his pretrial jail credits and the sentence reduction credit that he had earned while incarcerated. The State counters that the Petitioner attached only one page of a TOMIS statement and no other documents that show that he had earned the TDOC credits that he claims. The State further asserts that the faces of the judgments of conviction show that the trial court awarded the Petitioner jail credit for each of his convictions and that the faces of the judgments do not show that he is entitled to release, therefore, the habeas corpus court did not err when it dismissed the petition. We agree with the State.

Article I, section 15 of the Tennessee Constitution guarantees the right to seek habeas corpus relief. *See Faulkner v. State*, 226 S.W.3d 358, 361 (Tenn. 2007). Although the right is guaranteed in the Tennessee Constitution, the right is governed by statute. T.C.A. §§ 29-21-101, -130 (2014). The determination of whether habeas corpus relief should be granted is a question of law and is accordingly given de novo review with no presumption of correctness given to the findings and conclusions of the court below. *Smith v. Lewis*, 202 S.W.3d 124, 127 (Tenn. 2006) (citation omitted); *Hart v. State*, 21 S.W.3d 901, 903 (Tenn. 2000). Although there is no statutory limit preventing a habeas corpus petition, the grounds upon which relief can be granted are very narrow. *Taylor v. State*, 995 S.W.2d 78, 83 (Tenn. 1999).

It is the petitioner's burden to demonstrate by a preponderance of the evidence that "the sentence is void or that the confinement is illegal." *Wyatt v. State*, 24 S.W.3d 319, 322 (Tenn. 2000). In other words, the very narrow grounds upon which a habeas corpus petition can be based are as follows: (1) a claim there was a void judgment that was facially invalid because the convicting court was without jurisdiction or authority to sentence the defendant; or (2) a claim the defendant's sentence has expired. *Stephenson v. Carlton*, 28 S.W.3d 910, 911 (Tenn. 2000); *Archer v. State*, 851 S.W.2d 157, 164 (Tenn. 1993). "An illegal sentence, one whose imposition directly contravenes a statute, is considered void and may be set aside at any time." *May v. Carlton*, 245 S.W.3d 340, 344 (Tenn. 2008) (citing *State v. Burkhart*, 566 S.W.2d 871, 873 (Tenn. 1978)). In contrast, a voidable judgment or sentence is "one which is facially valid and requires the introduction of proof beyond the face of the record or judgment to establish its invalidity." *Taylor*, 995 S.W.2d at 83 (citations omitted); see *State v. Ritchie*, 20 S.W.3d

624, 633 (Tenn. 2000). The petitioner bears the burden of showing, by a preponderance of the evidence, that the conviction is void or that the prison term has expired. *Passarella v. State*, 891 S.W.2d 619, 627 (Tenn. Crim. App. 1994).

A habeas court may summarily dismiss a petition of habeas corpus without the appointment of a lawyer and without an evidentiary hearing if there is nothing on the face of the judgment to indicate that the convictions addressed therein are void. *See Passarella*, 891 S.W.2d at 627; *Rodney Buford v. State*, No. M1999-00487-CCA-R3-PC, 2000 WL 1131867, at *2 (Tenn. Crim. App., at Nashville, July 28, 2000), *perm. app. denied* (Tenn. Jan. 16, 2001).

In the case under submission, the Petitioner has not proven that he is entitled to habeas corpus relief. Pursuant to the face of his judgments, his release eligibility date, considering the pretrial jail credits awarded to him, would be July 13, 2017. If TDOC awards him sentencing reduction credit for good behavior, his release eligibility date may be sooner, depending on the number of days awarded him.

Tennessee Code Annotated section 41-21-236 governs sentence reduction credits and provides that inmates who "exhibit good institutional behavior . . . may be awarded time credits toward the sentence imposed varying between one (1) day and sixteen (16) days for each month served." T.C.A. § 41-21-236 (2014). The Tennessee Department of Correction, not the trial court, "has the authority and responsibility to determine sentence expiration dates and release eligibility dates of its prisoners regardless of where they are housed." *Yates v. Parker*, 371 S.W.3d 152, 155 (Tenn. Crim. App. 2012) (citing *Shorts v. Bartholomew*, 278 S.W.3d 268, 279 (Tenn. 2009)). "[C]laims for post-judgment jail credit are not cognizable habeas corpus claims." *Yates*, 371 S.W.3d at 156; *see also Tucker v. Morrow*, 335 S.W.3d 116, 122 (Tenn. Crim. App. 2009) (because the application of sentence reduction credits lies "solely within the discretion of the warden of the institution where the inmate is incarcerated, claims regarding the miscalculation or misapplication of sentence reduction credits are not cognizable in a habeas corpus petition"). Therefore, because the calculation of such credits is not a cognizable claim for habeas relief, the Petitioner is not entitled to habeas corpus relief on this basis.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the Petitioner is not entitled to habeas corpus relief. As such, we affirm the habeas corpus court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

6