IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 5, 2022 Session

FILED
06/29/2023
Clerk of the
Appellate Courts

## ERNEST FALLS ET AL. V. MARK GOINS ET AL.

**Appeal by Permission from the Court of Appeals
Chancery Court for Davidson County
No. 20-0704-III        Ellen Hobbs Lyle, Chancellor**

_____

**No. M2020-01510-SC-R11-CV**
_____

SHARON G. LEE, J., dissenting.

Ernest Falls' right to vote is guaranteed under the Tennessee Constitution. Tenn. Const. art. I, § 5.[1] In 1986, almost forty years ago, Mr. Falls was convicted of an infamous crime in Virginia. He completed his sentence in 1987. In 2018, Mr. Falls moved to Tennessee. In February 2020, the Governor of Virginia gave him an individualized grant of clemency, fully restoring his rights to vote, hold public office, serve on a jury, and be a notary public. With his voting rights fully restored, Mr. Falls tried to register to vote in Tennessee; he disclosed his previous conviction and verified the restoration of his right to vote. His application was denied because he provided no evidence that he did not owe restitution or court costs in Virginia from his 1986 conviction and that he was current on any child support obligations. *See* Tenn. Code Ann. § 40-29-202(b)–(c) (2018). Yet, under Tennessee Code Annotated section 2-19-143(3), Mr. Falls was not prohibited from voting because his right to vote had been restored by the grant of clemency. The requirement regarding restitution, court costs, and child support under section 40-29-202 does not apply to Mr. Falls because he had no need to have his voting rights restored.

The majority takes a different position with a two-step process that requires Mr. Falls to comply with section 2-19-143(3) *and* section 40-29-202. Under this approach, after the Governor of Virginia granted him clemency and restored his right to vote, Mr. Falls could not register to vote and have his right of suffrage restored unless he showed he had: (1) paid all court-ordered restitution to the victim of his 1986 offense in Virginia; (2) paid

---

[1] "[T]he right of suffrage . . . shall never be denied to any person entitled thereto, except upon a conviction by a jury of some infamous crime, previously ascertained and declared by law, and judgment thereon by court of competent jurisdiction."

all court costs assessed against him at the end of his trial in Virginia unless he had been found to be indigent; and (3) paid any child support obligations. *See id.*

Section 2-19-143 was enacted in 1981 as part of Title 2, Chapter 19, "Prohibited Practices." 1981 Tenn. Pub. Acts 463, 463–64. In three subsections, this statute prohibits certain persons from voting. Section 2-19-143(1) prohibits persons convicted of an infamous crime in Tennessee[2] from voting unless they have been pardoned by the governor or have had their full rights of citizenship otherwise restored. Section 2-19-143(2) is similarly worded and applies to persons convicted in federal court of a crime or offense that would be an infamous crime in Tennessee. Section 2-19-143(3) prohibits persons from voting who have been convicted in another state of a crime that would constitute an infamous crime in Tennessee unless, among other things, they have been pardoned or restored to rights of citizenship by the governor of the other state. This subsection, which applies to Mr. Falls, provides:

> No person who has been convicted in another state of a crime or offense which would constitute an infamous crime under the laws of this state, regardless of the sentence imposed, shall be allowed to register to vote or vote at any election in this state *unless such person has been* pardoned or *restored to the rights of citizenship by the governor* or other appropriate authority *of such other state, or* the person's full rights of citizenship have otherwise been restored in accordance with the laws of such other state, *or* the law of this state.

Tenn. Code Ann. § 2-19-143(3) (2014) (emphases added).

Based on the plain and unambiguous text of section 2-19-143(3), Mr. Falls, who had been convicted of an infamous crime in Virginia, could not vote in Tennessee *unless* his rights of citizenship had been restored. The Virginia Governor's grant of clemency fully restored Mr. Falls' rights of citizenship, including his right to vote. Thus, he was eligible to vote. In my view, the analysis ends there. Mr. Falls did not need to seek re-restoration of suffrage under section 40-29-202, nor did this section strip Mr. Falls of his previously restored right to vote.

Title 29, Chapter 40 does not apply to Mr. Falls. Part 1 of Title 29, Chapter 40, "Restoration of Citizenship," provides a detailed process for restoration of full rights of citizenship for people who have been rendered infamous or deprived of the rights of

---

[2] "Infamous crime" is defined by section 40-20-112: "Upon conviction for any felony, it shall be the judgment of the court that the defendant be infamous and be immediately disqualified from exercising the right of suffrage." Tenn. Code Ann. § 40-20-112 (2018).

citizenship. Under this statute, a citizen can petition the circuit court of his or her residence or county of conviction for restoration of citizenship. The petitioner must show by satisfactory proof that "since the judgment of disqualification, the petitioner has sustained the character of a person of honesty, respectability and veracity, and is generally esteemed as such by the petitioner's neighbors." Tenn. Code Ann. § 40-29-102 (2018); *see id.* § -101(a) ("Persons rendered infamous . . . may have their full rights of citizenship restored by the circuit court."). After notice to the district attorney general and an "opportunity to resist," *id.* § -103, the court can issue the petitioner a certificate of restoration which he can submit to the administrator of elections of the county where he is eligible to vote. *Id.* § -105(c)(7).

In 2006, part 2 was added to provide persons who are "deprived of the right of suffrage" with an alternative path of restoration of their voting rights. *Id.* § -202(a); *see id.* § -201(a) ("The provisions and procedures of this part shall apply to and govern *restoration* of the right of suffrage . . . ." (emphasis added)). Section 40-29-202(a) lists three categories of disenfranchised individuals who may have their right to vote restored under that section: (1) persons who received a pardon, "except where the pardon contains special conditions pertaining to the right of suffrage"; (2) persons who have served their maximum sentence; and (3) persons who were granted final discharge by the board of parole. *Id.* § -202(a)(1)–(3). The common denominator is that none of the individuals listed in (1) through (3) previously had their right to vote restored after their convictions. And *if* they rely on section 40-29-202 to restore their right to vote, they have to comply with the financial requirements of section 40-29-202(b) by showing they owe no restitution, court costs, or child support. Mr. Falls does not fall into any of the categories of disenfranchised persons outlined in section 40-29-202. To put it simply, Mr. Falls has no need to *double*-restore his right of suffrage.

The majority reasons that sections 2-19-143(3) and 40-29-202 have to be read together, or *in pari materia*, because they both relate to the restoration of suffrage rights. I disagree. Both statutes touch on voting, but there is insufficient similarity of subject matter to read them *in pari materia*. "A statute is not *in pari materia* if its scope and aim are distinct or where a legislative design to depart from the general purpose or policy of previous enactments may be apparent." Karl N. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons about How Statutes Are to Be Construed*, 3 Vand. L. Rev. 395, 402 (1950); *see Jackson v. Jackson*, 210 S.W.2d 332, 340 (Tenn. 1948) ("The reasons and purpose for the passage of the two sections were entirely different, and since there is no lack of clarity of word or phrase in either section, there is no basis for a construction of the two sections in pari materia.").

Section 2-19-143(3) prohibits certain people from voting, while section 40-29-202 deals with voting rights restoration. Section 2-19-143(3) lists "Prohibited Practices," including interfering with nominating meetings or elections (section 2-19-101), illegal

registration or voting (section 2-19-107), misrepresentations on campaign literature or sample ballots (section 2-19-116), bribing voters (section 2-19-126), and knowingly publishing false campaign literature (section 2-19-142). And section 2-19-143(3) prohibits persons from voting who have been convicted of an infamous crime in another state and who have not had their rights of citizenship restored. In another part of the Code, section 40-29-202 was enacted over twenty years later as part of Title 29, Chapter 40. 2006 Tenn. Pub. Acts 2135, 2135–38. This includes sections 40-29-202(b) and -202(c), which make persons ineligible to apply for a voter registration card unless they have paid restitution, court costs, and child support. *See* Tenn. Code Ann. § 40-29-202(b)–(c) (2018).

Adopted at different times, in different Titles of the Code, and for different purposes, section 40-29-202 and section 2-19-143 neither cross-reference the provisions of the other nor indicate the sections should be read together. Had the General Assembly intended to do so, it could easily have incorporated or referenced section 2-19-143 when later enacting section 40-29-202. Even though both statutes touch on voting, piggybacking the requirements of one onto the other stretches *in pari materia* construction beyond its proper scope.

Further, the text of both statutes counsels against reading them together as there is no ambiguity in the language of the statutes. Only when a statute is ambiguous should determining its meaning "be aided by considering the words and legislative intent indicated by the language of another statute." *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013) (quoting *Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn. 2010)); *see Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011) ("It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources." (citing *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998))). But, where the plain language of a statute is unambiguous, "we need not consider other sources of information but must simply enforce the statute as written." *State v. Linville*, 647 S.W.3d 344, 354 (Tenn. 2022) (quoting *Frazier v. State*, 495 S.W.3d 246, 249 (Tenn. 2016)).

Not even the State Officials contend section 40-29-202 is ambiguous. Instead, they argue that the plain language of section 40-29-202 "unambiguously applies to [Mr. Falls]." Considering one statute in construing the other in the absence of an ambiguity violates our duty to "apply the plain meaning without complicating the task." *Lind*, 356 S.W.3d at 895 (citing *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004)).

Even if the statutes are read *in pari materia*, the outcome does not change. Under the statutory canon of *in pari materia*, statutes "dealing with the same subject . . . should if possible be interpreted harmoniously." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 252 (2012); *see In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015). This statutory canon rests on two core principles: "that the body of the law

should make sense," and "that it is the responsibility of the courts, within the permissible meanings of the text, to make it so." Scalia & Garner, *supra*, at 252. Thus, our goal in interpreting seemingly disparate statutes is to give full meaning to the enactments of the General Assembly and, where possible, construe statutes harmoniously. *Shorts v. Bartholomew*, 278 S.W.3d 268, 277 (Tenn. 2009); *Lawrence Cnty. Educ. Ass'n v. Lawrence Cnty. Bd. of Educ.*, 244 S.W.3d 302, 309 (Tenn. 2007); *LensCrafters, Inc. v. Sundquist*, 33 S.W.3d 772, 777 (Tenn. 2000) ("[W]e must seek the most 'reasonable construction which avoids statutory conflict and provides for harmonious operation of the laws.'" (quoting *Carver v. Citizen Utils. Co.*, 954 S.W.2d 34, 35 (Tenn. 1997))).

Mr. Falls' reading of the statutes harmoniously reconciles sections 2-19-143(3) and 40-29-202. Individuals who are eligible to vote under section 2-19-143 because their rights were previously restored need not pursue the process of restoration under section 40-29-202. This fits with the plain language of section 2-19-143, which disjunctively states the exceptions to its disenfranchisement of individuals convicted of infamous crimes. It is also consistent with the language of section 40-29-202, which expressly contemplates that the individuals taking advantage of the restoration procedure are those who are "deprived of the right of suffrage by the judgment of any state or federal court." Tenn. Code Ann. § 40-29-202(a) (2018). Where the right of suffrage already exists, whether by the undisturbed guarantee of the Tennessee Constitution or because of the exceptions to section 2-19-143, there is no need for "restoration." This reading gives effect to the text of the statutes, properly harmonizes the statutes, and ensures that no portion of the text is rendered "inoperative, superfluous, void or insignificant." *Young v. Frist Cardiology, PLLC*, 599 S.W.3d 568, 571 (Tenn. 2020) (quoting *City of Caryville v. Campbell Cnty.*, 660 S.W.2d 510, 512 (Tenn. Ct. App. 1983)).

Under the majority's rationale, a person with an out-of-state conviction who was granted clemency *before* he moved to Tennessee might be able to vote without resort to section 40-29-202. It makes no sense to deprive a Tennessee citizen of the right to vote because he moved to Tennessee before having that right restored. And it makes no sense for Tennessee to become a debt collector for Virginia by depriving a Tennessee resident of the right to vote because he provided no evidence to show that he did not owe court costs or restitution in Virginia from a case over forty years old.

The right to vote "is a fundamental matter in a free and democratic society." *Reynolds v. Sims*, 377 U.S. 533, 561–62 (1964). Mr. Falls' voting rights were fully restored; he should not be denied his constitutional right to vote.

I respectfully dissent.

_____
SHARON G. LEE, JUSTICE