# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs September 1, 2009

## STATE OF TENNESSEE v. ERICA HARRISON and ALEXIS HARRISON

**Direct Appeal from the Circuit Court for Madison County**
No. 08-0148    Donald H. Allen, Judge

**No. W2008-02036-CCA-R3-CD  - Filed April 26, 2010**

The Defendants-Appellants, Erica Harrison and Alexis Harrison, each entered an open guilty plea to one count of theft of property valued at more than five hundred dollars ($500) but less than one thousand dollars ($1,000), a Class E felony, with the length and manner of service of the sentence to be determined by the trial court.  Both requested judicial diversion, which the court denied.  The trial court sentenced Erica Harrison as a Range I, standard offender to 180 days in the Tennessee Department of Correction with the balance of her two-year sentence to be served on supervised probation and sentenced Alexis Harrison as a Range I, standard offender to 90 days in the Tennessee Department of Correction with the balance of her sentence to be served on supervised probation.  On appeal, Erica and Alexis Harrison argue that the trial court abused its discretion by (1) denying judicial diversion and (2) denying full probation.  Upon review, we affirm the trial court's judgments but remand for a new sentencing hearing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court
Affirmed and Remanded for Entry of Corrected Judgments**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

J. Colin Morris, Jackson, Tennessee, for the Defendants-Appellants, Erica Harrison and Alexis Harrison.

Robert E. Copper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

**Guilty Plea Hearing.** Erica and Alexis Harrison failed to include a copy of the guilty plea colloquy on appeal. However, as we will explain, we will address the issues presented on appeal because we conclude that the record is sufficient for our review.

**Sentencing Hearing.** At the August 25, 2008 sentencing hearing, the State's only proof was the presentence investigation report, which was entered into evidence. The defense presented no proof at the sentencing hearing. At the beginning of the hearing, the trial court summarized the underlying facts for the Harrisons' open guilty pleas:

> In this case which is Docket No. 08-148, I show that both Ms. Alexis Harrison and also Ms. Erica Harrison have both entered a guilty plea, just a[n] [open] plea, to the charge of theft of property over $500 which is a Class E felony. I believe they both stated under oath at the time of the guilty plea that they did in fact take items belonging to the Marshall's store over the value of $500 on the date of November [6,] 2007. I believe it was stated at the time that they had placed various clothing items inside a toy box or a cardboard box. I believe the toys had actually been removed from the box and once the box was empty then these defendants both have admitted to placing various clothing items inside the box. I believe it was also stated at the time of the guilty plea that these two defendants along with their mother, Ms. Sabrina Harrison, that those individuals did leave the Marshall's store and a fourth individual who happened to be a juvenile, a 16[-]year[-]old juvenile, Ms. Noonan, tried to exit the store with these various clothing items and, of course, she was detained by the employees of the Marshall store and was held there. It was also determined that the three adults that had left the store, Ms. Alexis Harrison and Ms. Sabrina Harrison and Ms. Erica Harrison, were also involved in the taking of these various clothing items. Now, I believe the statement of the facts also indicated that there was a video tape that captured this entire episode of these individuals stealing from the Marshall's store and I know previously the Court was asked to consider judicial diversion for these individuals and the Court did in fact review the video tape at an earlier hearing at an earlier time and clearly the video showed that all of these individuals were involved in participating with this theft of property of these clothing items over $500.
>
> Now, I believe at the time that Ms. Alexis Harrison and also Ms. Erica Harrison pled guilty, they did give sworn testimony under oath that their mother, Ms. Sabrina Harrison, was not involved in taking these clothing items. Based upon that testimony, the State moved to dismiss the charge against Ms. Sabrina Harrison.

Now, we're here today because the Court has been asked to consider each . . . defendant['s] request for judicial diversion. As I mentioned, each one has pled to this charge of theft over $500. The Court will consider each defendant's amenability to correction. The Court will also consider the circumstances of this offense which I have just described. The Court will also consider each defendant's criminal record which I'll talk about here in just a minute. Also the Court will consider the defendants' social history which is also detailed in these presentence investigation reports which the Court has reviewed in detail. The Court will also consider the status of the accused that is each defendant's physical and mental health. I believe Ms. Alexis Harrison is the younger. She is 19 years of age and her sister, Ms. Erica Harrison, is 23 years of age. I will consider that with respect to each.

The Court will also consider the deterrence value to the accused as well as the deterrence value to other individuals charged with theft. Certainly the Court will consider in this case whether judicial diversion would serve the interest of the public as well as serve the interest of these two defendants.

Prior to sentencing Erica and Alexis Harrison, the court stated:

The Court is going to consider for sentencing purposes the evidence that was presented at the guilty plea [hearing]. I will consider these presentence reports that I've talked about and certainly will consider the Principles of Sentencing. [I a]lso will consider the nature and characteristics of this criminal conduct involved. . . . The Court will consider also for sentencing purposes the evidence and information that's been argued . . . . I will consider their amenability to rehabilitation although I question whether or not they can be rehabilitated. I also will consider the arguments for alternative sentencing.

At the conclusion of the sentencing hearing, the trial court denied judicial diversion and sentenced Erica Harrison as a Range I, standard offender to 180 days in the Tennessee Department of Correction with the balance of her two-year sentence to be served on supervised probation and sentenced Alexis Harrison as a Range I, standard offender to 90 days in the Tennessee Department of Correction with the balance of her sentence to be served on supervised probation. Erica and Alexis Harrison filed a timely notice of appeal, and the trial court subsequently set an appeal bond and ordered that they were to be released on their own recognizance and placed on house arrest, pending the appeal of their sentences.

## ANALYSIS

**I.  Failure to Include Copy of Guilty Plea Transcript.**  As previously stated, Erica and Alexis Harrison failed to include the transcript of the guilty plea colloquy on appeal. The appellant has a duty to prepare a record that conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal."  Tenn. R. App. P. 24(b).  "In the absence of an adequate record on appeal, we must presume that the trial court's ruling was supported by the evidence."  State v. Bibbs, 806 S.W.2d 786, 790 (Tenn. Crim. App. 1991) (citing Smith v. State, 584 S.W.2d 811 (Tenn. Crim. App. 1979); Vermilye v. State, 584 S.W.2d 226 (Tenn. Crim. App. 1979)), perm. to appeal denied (Tenn. Mar. 18, 1991); see also State v. Keen, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999) (holding that the defendant's failure to include the transcript of the guilty plea hearing and a copy of the indictment required a presumption that "had all of the evidence considered by the trial court been included in the record on appeal, it would have supported the imposition of a six [-]year sentence"), perm. to appeal denied (Tenn. June 21, 1999).  The trial court's denial of judicial diversion and full probation can be presumed correct on this ground alone. Keen, 996 S.W.2d at 844.  However, because we conclude that the record is sufficient for our review, we will address the issues presented on appeal.

**II.  Sentencing.**  Erica and Alexis Harrison argue that the trial court abused its discretion in denying judicial diversion and in denying full probation.  In response, the State acknowledges that the trial court erred in requiring that their sentences be served "day-for-day" but contends that in all other respects the sentences are proper and the trial court's judgments should be affirmed.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006).  Nevertheless, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  The defendant has the burden of showing the impropriety of the sentence. T.C.A. § 40-35-401(d) (2006), Sentencing Comm'n Comments. This means that if the trial court followed the statutory sentencing procedure, made adequate findings of fact that are supported by the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, this court may not disturb the sentence even if we would have preferred a different result.  State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).  Because the trial court in this case properly considered the sentencing principles and all relevant facts and circumstances, our review is de novo with a presumption of correctness.  See Ashby, 823 S.W.2d at 169.

A trial court, when sentencing a defendant must consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b) (2006); see also State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002); State v. Osborne, 251 S.W.3d 1, 24 (Tenn. Crim. App. 2007), perm. to appeal denied (Tenn. Jan. 28, 2008).

**A. Denial of Judicial Diversion.** Erica and Alexis Harrison argue that the trial court abused its discretion in denying their requests for judicial diversion. They contend that their criminal history did not preclude them from being eligible for judicial diversion and that the trial court improperly denied judicial diversion primarily because of their criminal history. In response, the State argues that the trial court properly considered and weighed the factors for judicial diversion, and there was substantial evidence to support the trial court's denial of diversion.

Tennessee Code Annotated section 40-35-313 outlines the requirements for judicial diversion. After a qualified defendant is either found guilty or pleads guilty, a trial court has the discretion to defer further proceedings and place that defendant on probation without entering a judgment of guilt. T.C.A. § 40-35-313(a)(1)(A) (2006). A qualified defendant is defined as a defendant who pleads guilty to or is found guilty of a misdemeanor or a Class C, D, or E felony; is not seeking diversion for a sexual offense or a Class A or Class B felony; and does not have a prior conviction for a felony or a Class A misdemeanor. Id. § 40-35-313(a)(1)(B)(i) (2006). Upon the qualified defendant completing a period of probation, the trial court is required to dismiss the proceedings against him. Id. § 40-35-313(a)(2) (2006). The qualified defendant may then request that the trial court expunge the records from the criminal proceedings. Id. § 40-35-313(b) (2006).

Whether to grant or deny a request for judicial diversion lies within the trial court's sound discretion. State v. Harris, 953 S.W.2d 701, 705 (Tenn. Crim. App. 1996) (citation omitted). Accordingly, the trial court's decision regarding diversion will not be disturbed on appeal absent an abuse of discretion. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983)). This court will conclude that the trial court did not abuse its discretion if the record contains "'any substantial evidence to support the refusal.'" State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992) (quoting Hammersley, 650 S.W.2d at 356).

The trial court must consider the following factors in deciding whether a qualified defendant should be granted judicial diversion: (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) the deterrence value to the defendant and others; and (7) whether judicial diversion will serve the interests of the public as well as the defendant. Electroplating, Inc., 990 S.W.2d at 229 (citing State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996), perm. to appeal denied (Tenn. Sept. 9, 1996); State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993) (citation omitted), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000)). The trial court may consider the following additional factors: "[the defendant's] attitude, behavior since arrest, prior record, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility and attitude of law enforcement." State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993) (citations and internal quotation omitted). The trial court must weigh all of the factors in determining whether to grant judicial diversion. Electroplating, Inc., 990 S.W.2d at 229 (citing Bonestel, 871 S.W.2d at 168). Finally, "a trial court should not deny judicial diversion without explaining both the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh other factors for consideration." State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997) (citing Bonestel, 871 S.W.2d at 168).

**1. Amenability to Correction.** The trial court determined that Erica Harrison's amenability to correction was poor because of her statement in the presentence report, which provided, "My sister friend [sic] was telling me about it. And I just wanted to see was it going to work [sic]." The court determined that the level of planning associated with this offense reduced the likelihood that Erica could be successfully rehabilitated:

> Obviously there was a plan that they had discussed, talked about, went out to the store and tried to implement it and they got caught stealing over $500 worth of clothes from Marshall's. So I take that into consideration because, number one, the Court finds that the defendant's amenability to correction is not good.

Regarding Alexis Harrison, the court determined that her amenability to correction was poor because of her statement in the presentence report, which provided: "Just being there, didn't have no [sic] activities in it. Plea[ded] to [the offense of theft] because I was there." The court emphasized that Alexis's failure take responsibility for her role in the offense did not make her amenable to correction:

> Even though [Alexis has] come into court and pled guilty and admitted under oath that she's guilty of theft of property, she then turns around in her statement to the presentence writer and says she didn't do anything [wrong,] that she was just there which totally contradicts what she told me under oath at the time she pled guilty.

**2. The circumstances of the offense.** In considering the circumstances of the offense, the trial court placed particular emphasis on the Harrisons' planning of the offense and use of a juvenile to commit the offense:

> [As to] the circumstances of the offense, this required a lot of planning on their part so I take that into account. Also the fact that they were using a juvenile to commit this theft concerns the Court greatly. I mean, this isn't just a mother and two daughters going out there to steal, they actually recruited a 16[-]year [-]old juvenile to go out there with them to do that. So the Court takes that into consideration for sentencing purposes.

**3. The defendants' criminal records.** The trial court noted that Erica Harrison had a criminal history consisting of numerous traffic convictions, which the court considered to be "some criminal behavior." In addition, the court noted that she had prior juvenile convictions for "theft, shoplifting and theft of property." The court emphasized that these juvenile convictions showed a pattern of behavior:

> . . . I do consider this criminal record, especially these theft convictions that she has on her record. Even though those were committed as a juvenile, [they] indicate[] to the Court that this history of theft has . . . continued from the time she was a juvenile up and through the time she is a 23[-]year[-]old adult.

Regarding Alexis Harrison, the trial court noted that as a juvenile she was found guilty of the felony of filing a false police report regarding a bomb threat at Walmart. The court stated that "[t]hat's really the only criminal record she has but that is a felony as a juvenile which I will consider."

**4.  The defendants' social histories and physical and mental health.**
At the sentencing hearing on August 25, 2008, the trial court noted that Erica Harrison was currently working at Fazoli's on light duty after suffering a worker's compensation injury.  The court also noted that Alexis Harrison had previously been employed at S.M. Lawrence but was not currently working as of the date of the hearing.

At the conclusion of the hearing on August 25, 2008, the trial court stated that before it determined whether Erica and Alexis Harrison would receive judicial diversion, he wanted to review their presentence reports, which contained "a lot of information concerning each individual."  At the conclusion of the sentencing hearing on September 2, 2008, the court reiterated that it had considered "the presentence reports that I've talked about[.]"

The presentence report for Erica Harrison showed that she was twenty-three years old and had graduated high school after completing a correspondence program.  The report showed that her mental health was excellent, and her physical health was good.  The report further showed that she had never used any alcohol or drugs, although she had a current prescription for hydrocodone for the pain associated with her ankle, which she had broken at work.  Finally, the presentence report showed that she had two sons under the age of five years old.

The presentence report for Alexis Harrison showed that she was nineteen years old, had graduated high school, and was currently enrolled at the West Tennessee Business College.  The report also showed that he mental health was good, and she had never used any alcohol or illegal drugs.  The report further showed that Alexis Harrison lived at home with her mother, father, brother, sister, and two nephews.

**5.  The deterrence value to the defendants and others.**  The court noted that "[t]heft of property is a serious problem in Madison County, Tennessee[,] especially theft from stores such as Marshall's, Sears, T.J. Maxx.  Every month we have these stores who are being victimized by people going out and stealing.  It's just a problem."

**6.  Whether judicial diversion will serve the interests of the public as well as the defendants.**  The trial court placed particular emphasis on the lack of candor shown by Erica and Alexis Harrison during the case:

> The Court finds that neither one of these two defendants has been totally honest and truthful in this case.  I say that because the facts just don't add up.  For them to come up here and tell this Court that Sabrina Harrison, their mother, had nothing to do with this theft just defies all logic.  When you look at the video, you can see the mother right there working and walking with these other two.  They are all involved in this and the Court finds that their

lack of truthfulness and their lack of candor is an indication of [their] lack of hope for rehabilitation. I sincerely question whether or not these young ladies can be rehabilitated because they can't even be honest when they are sworn under oath about who was involved in this. I mean, I think the simple truth is Sabrina Harrison, the mother, was involved in this and I believe both of these daughters are trying to protect their mother. . . . So I don't feel like either one of them deserves judicial diversion. I don't feel like either one of them would successfully complete judicial diversion in this case.

Here, the court determined that neither Erica nor Alexis Harrison was an appropriate candidate for judicial diversion because of "their past criminal history . . . and also because of their untruthfulness to this Court." This court has previously recognized that "adjudications of delinquency in juvenile court do not automatically disqualify a defendant seeking judicial diversion." State v. Timothy Frazier, No. W2007-00692-CCA-R3-CD, 2007 WL 4462994, at *2 (Tenn. Crim. App., at Jackson, Dec. 20, 2007). Although Alexis Harrison's only criminal conviction was her felony juvenile conviction for filing a false police report, the record on appeals shows that her criminal history was only one of many factors the court considered before determining that she was not an appropriate candidate for judicial diversion.

As previously discussed, "a trial court should not deny judicial diversion without explaining both the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh other factors for consideration." Cutshaw, 967 S.W.2d at 344 (citing Bonestel, 871 S.W.2d at 168). Although the trial court considered the relevant factors for judicial diversion, it failed to appropriately weigh these factors, and it failed to explain why the factors against diversion outweighed the factors in favor diversion. We emphasize that it is a far better practice for a trial court to explicitly weigh each factor and to explain why one set of factors outweighs the other set of factors before concluding that judicial diversion is granted or denied.

We recognize that several aspects of the Harrisons' social history and mental and physical health weighed in favor of granting judicial diversion. However, despite these favorable factors, all the remaining factors strongly disfavored the grant of judicial diversion in this case. At the conclusion of the sentencing hearing, the trial court focused on the Harrisons' criminal history and untruthfulness to the court. "Lack of candor and credibility are indications of a defendant's potential for rehabilitation." State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999) (citing State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983); State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); State v. Williamson, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); State v. Dowdy, 894 S.W.2d 301, 305-06 (Tenn. Crim. App. 1994)), perm. to appeal denied (Tenn. Feb. 7, 2000). See also State v. Nease, 713 S.W.2d 90, 92 (Tenn. Crim. App. 1986) (concluding that a defendant's lack of candor and lack of accountability prevented him from being considered a good candidate for pretrial

diversion, despite his positive social history). Moreover, "[t]he trial judge is in the best position to assess a defendant's credibility and potential for rehabilitation[,]" and "[a] defendant's potential for rehabilitation 'should be considered in determining the sentence alternative or length of a term to be imposed.'" Nunley, 22 S.W.3d at 289 (quoting T.C.A. § 40-35-103(5)). The court also noted that the statements given by the Harrisons in their presentence reports showed a failure to accept responsibility for their actions. See Anderson, 857 S.W.2d at 574 (concluding that the trial court did not abuse its discretion in denying judicial diversion where the defendant failed to be accountable for his actions). We conclude that there is "substantial evidence" supporting the trial court's denial of judicial diversion. Hammersley, 650 S.W.2d at 356. Accordingly, the trial court did not abuse its discretion in denying judicial diversion.

B. **Denial of Full Probation.** Erica and Alexis Harrison contend that the trial court erred in refusing to grant them full probation. Specifically, they argue that their 180-day and 90-day periods of "shock" incarceration were "not justly deserved in relation to the seriousness of the offenses[.]" Finally, they contend that they accepted responsibility for their offenses by pleading guilty and that they are capable of complete rehabilitation through a sentence of full probation.

Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Tennessee Code Annotated section 40-35-102(6) (2006) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D, or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" A trial court should consider the following when determining whether there is "evidence to the contrary" that would prevent an individual from receiving alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C) (2006); see also Ashby, 823 S.W.2d at 169.

We note that the trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996), perm. to appeal denied (Tenn. Oct. 14, 1996). Where a defendant is considered a favorable candidate for alternative sentencing, the State has the burden of presenting evidence to the contrary. See State v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995), overruled on other grounds by Hooper, 29 S.W.3d at 9. However, the defendant has the burden of establishing suitability for full probation, even if the defendant is considered a favorable candidate for alternative sentencing. See id. (citing T.C.A. § 40-35-303(b)).

A defendant is eligible for probation if the actual sentence imposed upon the defendant is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. T.C.A. § 40-35-303(a) (2006). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. Id. § 40-35-303(b) (2006). In addition, "the defendant is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b) (2006), Sentencing Comm'n Comments. Rather, the defendant must demonstrate that probation would serve the ends of justice and the best interests of both the public and the defendant. See State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citation omitted), perm. to appeal denied (Tenn. Mar. 17, 2003).

When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, his present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. See State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285 (Tenn. 1978)). The court should also consider the potential for rehabilitation or treatment of the defendant in determining the appropriate sentence. See T.C.A. § 40-35-103(5) (2006). In addition, the principles of sentencing require the sentence to be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4) (2006). Moreover, our supreme court has held that truthfulness is a factor which the court may consider in deciding whether to grant or deny probation. Bunch, 646 S.W.2d at 160 (citing State v. Poe, 614 S.W.2d 403, 404 (Tenn. Crim. App. 1981), perm. to appeal denied (Tenn. Mar. 23, 1981)).

Here, Erica and Alexis Harrison each entered an open guilty plea to one count of theft of property valued at more than five hundred dollars ($500) but less than one thousand dollars ($1,000), a Class E felony, thereby making them favorable candidates for alternative sentencing under section 40-35-102(6) (2006). The record shows that the trial court

considered all of the relevant factors for probation when determining whether Erica and Alexis Harrison would receive judicial diversion. In addition, the trial court specifically stated the following regarding whether Erica and Alexis Harrison were proper candidates for probation:

> Now as far as whether or not these individuals are appropriate candidates for probation – I will say this as far as mitigating, they both have pled guilty. They didn't deny their guilt. They came in and admitted guilt and accepted responsibility for their actions and even I think probably went beyond and tried to accept responsibility for their mother's action[s in this case], but, again, they at least pled guilty and admitted guilt in this case

The court ordered Erica to serve 180 days in the Tennessee Department of Correction before serving the balance of her two-year sentence on supervised probation and ordered Alexis to serve 90 days in the Tennessee Department of Correction before serving the balance of her two-year sentence on supervised probation. The trial court determined that some period of confinement was necessary:

> Now, again, the Court finds that in this particular case in order not to depreciate the seriousness of this offense that they should serve this shock period of incarceration. I don't really think either one of them is a candidate for full probation based upon their [criminal] history and based upon their lack of []truthfulness, but I am going to at least give them the opportunity to convince me that they can make it on probation after they have served this period of shock incarceration.

> Neither Erica nor Alexis Harrison presented any proof at the sentencing hearing. The trial court emphasized the Harrisons' criminal history and lack of candor as reasons to deny full probation. We have already noted that truthfulness may be considered by a trial court in determining whether to grant probation. See Bunch, 646 S.W.2d at 160. Moreover, the record shows that Erica and Alexis Harrison failed to meet their burden of establishing suitability for full probation. See Bingham, 910 S.W.2d at 454 (citing T.C.A. § 40-35-303(b)). Accordingly, we conclude that the trial court did not err in denying full probation in this case. Furthermore, although not specifically raised in this appeal, we also conclude that Erica Harrison's 180-day period of confinement and Alexis Harrison's 90-day period of confinement were not excessive.

> However, we note that the trial court erred in requiring that the Harrisons' confinement be served "day-for-day" in the Tennessee Department of Correction. Tennessee

Code Annotated section 40-35-306(a) (2006) requires that a sentence of split confinement that includes a period of "continuous confinement for up to one (1) year" be served "in the local jail or workhouse." See also T.C.A. § 40-35-314(a) (2006) ("If confinement is directed, the court shall designate the place of confinement as a local jail or workhouse if required pursuant to § 40-35-104(b) or, if the sentence is eight (8) years or less and combined with periodic or split confinement not to exceed one (1) year, the court shall designate the place of confinement as a local jail or workhouse."); Shorts v. Bartholomew, 278 S.W.3d 268, 275 (Tenn. 2009) (concluding that the trial court erred in sentencing the defendant to one year in the Tennessee Department of Correction followed by seven years of probation since the one year of confinement should have been served in the local jail or workhouse pursuant to Tennessee Code Annotated sections 40-35-306(a), -314(a) (2006)). Furthermore, "any trial court sentencing order that extends the term of confinement beyond that allowed by law relative to release eligibility and sentencing credits is improper." State v. James Kevin Underwood, No. E2000-01945- CCA-R3-CD, 2001 WL 872436, at *3 (Tenn. Crim. App, at Knoxville, Aug. 2, 2001); see also T.C.A. § 41-2-111(b) (2006) (providing that felons serving less than one year in the county jail or workhouse are to receive good conduct credits). Therefore, we remand both cases for a new sentencing hearing. Upon remand, the trial court should be mindful of the above authority in re-sentencing each defendant.

## CONCLUSION

Upon review of the record, we affirm the trial court's judgments. However, we remand for a new sentencing hearing.

_____
CAMILLE R. McMULLEN, JUDGE