# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
Heard in Jackson April 6, 2017 Session

## JASON RAY v. MADISON COUNTY, TENNESSEE

**Rule 23 Certified Question of Law
from the United States District Court
for the Western District of Tennessee
No. 15-1015          J. Daniel Breen, Judge**

_____

**No. M2016-01577-SC-R23-CV – Filed August 16, 2017**
_____

We accepted certification of questions of law from the United States District Court for the Western District of Tennessee, which require us to determine: (1) whether, for split confinement sentences, Tennessee law authorizes a sentencing court to fix a percentage of the sentence that a defendant must serve in actual confinement before becoming eligible to participate in a work program in the local jail or workhouse; and (2) whether Tennessee law imposes a duty on a sheriff to challenge an inmate's improper or potentially improper sentence. We conclude (1) that for split confinement sentences Tennessee trial judges are authorized to fix a percentage the defendant must serve in actual confinement before becoming eligible to earn work credits; and (2) that sheriffs in Tennessee have no duty to challenge an inmate's sentence as improper or potentially improper.

### Tenn. Sup. Ct. R. 23 Certified Questions of Law

CORNELIA A. CLARK, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and SHARON G. LEE, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

James Bryan Moseley, Murfreesboro, Tennessee, and LeAnne Thorne, Lexington, Tennessee, for the petitioner, Jason Ray.

Nathan D. Tilly, and James I. Pentecost, Jackson, Tennessee, for the respondent, Madison County, Tennessee.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Charlotte Davis, Assistant Attorney General,  for the amicus curiae, Tennessee Attorney General and Reporter.

Jerry N. Estes, Nashville, Tennessee, for the amicus curiae, Tennessee District Attorneys General Conference.

Joe Atnip and Patrick G. Frogge, Nashville, Tennessee, for the amicus curiae, Tennessee Public Defenders Conference.

Richard Lewis Tennent, Nashville, Tennessee, and Sara Compher Rice, Knoxville, Tennessee, for the amicus curiae, Tennessee Association of Criminal Defense Lawyers.

Brennan M. Wingerter, Knoxville, Tennessee, for the amicus curiae, Tennessee Sheriffs' Association.

## OPINION

### I. Factual and Procedural Background[1]

The certified questions of law at issue in this appeal arise from a lawsuit Jason Ray brought in the United States District Court for the Western District of Tennessee ("District Court") pursuant to 42 U.S.C. § 1983. Mr. Ray alleged that his civil rights were violated when his sentence was not reduced by the work credits he earned as a trusty[2] while confined in the Madison County, Tennessee jail ("Jail") on his split confinement sentence.[3] Mr. Ray's confinement in the Jail resulted from his plea of guilty on June 3, 2013, to theft of property over $60,000, a Class B felony. Tenn. Code Ann. §§ 39-14-103, -105(a)(5) (2014 & Supp. 2016). Class B felonies have an overall sentencing range of eight to thirty years, id. § 40-35-111(b)(2) (2014),[4] with Range I

---

[1] Because this appeal involves a certified question of law from a federal court, we have no record and derive the factual and procedural background from the District Court's certification order and from the District Court's March 16, 2016 order granting in part and denying in part Defendants' motion for summary judgment, which the District Court incorporated by reference into its certification order. Tenn. Sup. Ct. R. 23, § 3(B).

[2] The "trusty" program is an inmate worker program whereby inmates are able to earn sentence reduction work credits as well as certain privileges while incarcerated.

[3] Mr. Ray named as defendants Madison County and three individuals, Sheriff David Woolfork, Captain Tom Rudder, and Sergeant Chester Long, Jr., but the District Court dismissed Sheriff Woolfork and granted summary judgment to Captain Rudder and Sergeant Long on the basis of qualified immunity. The District Court refused to grant Madison County summary judgment, concluding that a reasonable finder of fact could determine that the procedures afforded by Madison County, or lack thereof, failed to provide Mr. Ray due process under the Fourteenth Amendment to the United States Constitution. Therefore, Mr. Ray and Madison County are the only parties before this Court.

[4] Mr. Ray's guilty plea was based on his stealing money over a two-year period from First Assembly of God Church in Jackson, Tennessee—where he served as secretary, treasurer, and youth

offenders, like Mr. Ray, subject to a range of eight to twelve years, id. § 40-35-112(a)(2). Mr. Ray received a ten-year sentence, but the trial court ordered only eleven months and twenty-nine days served in confinement at the Jail and ordered the remainder of the sentence served on supervised probation. This type of sentence, known as "split confinement" or "shock probation," is considered valuable "in combining both incarceration and rehabilitation as part of a sentencing program." Tenn. Code Ann. § 40-35-306 (2014), Sentencing Comm'n Cmts.;[5] see also Shorts v. Bartholomew, 278 S.W.3d 268, 271 (Tenn. 2009).

Mr. Ray entered the Jail to serve the confinement portion of his sentence on July 18, 2013, almost two weeks before the trial court issued its official judgment on July 31, 2013. Such delay between inmates entering the Jail and the Jail receiving official judgments was not uncommon. As a result, each inmate ordinarily entered the Jail with a "disposition sheet"—a document described in the record as a written form meant to ensure that the Jail received accurate information concerning the inmate's sentence and what had occurred in the trial court. Although the disposition sheet had a signature line for the judge, it was not an official court document. Nevertheless, Jail personnel entered sentencing information from disposition sheets into the Jail's computer system before receiving official judgments. After receiving an official judgment, Jail procedure called for Jail personnel to compare it to the information taken from the inmate's disposition sheet. Where the official judgment differed from the disposition sheet, or questions arose about the inmate's sentence, Jail procedure called for Jail personnel to seek clarification from the attorneys or the judge involved in the case.

The disposition sheet with which Mr. Ray entered the Jail on July 18, 2013, contained no language prohibiting him from immediately serving as a trusty and earning work credits. Five days after his arrival at the Jail, Mr. Ray signed an Inmate Worker Policy Contract, which designated him a trusty inmate worker and assigned him to work in the kitchen. Mr. Ray's responsibilities included cooking, cleaning, and passing out meal trays throughout the day. To fulfill these duties, Mr. Ray awoke daily between 2:30 and 3:00 a.m. to serve breakfast at 4:30 a.m. As a trusty, Mr. Ray also received certain privileges, including issuance of a white jumpsuit instead of the blue one worn by the Jail's general population, assignment to a trusty-only residence pod, permission to wear tennis shoes, extra food, special dining times, and unlimited tea.

---

director—by using his power as treasurer to write checks to himself in amounts ranging from $500 to $600.

[5] The Sentencing Commission Comments to the Sentencing Act do not reflect legislation enacted in 1995 or thereafter because the Sentencing Commission terminated on June 30, 1995. Nevertheless, Tennessee Code Annotated section 40-35-306 has not been amended since 1989. Therefore, the Sentencing Commission Comments to section 40-35-306 remain accurate. See Tenn. Code Ann. § 40-35-101 (2014), Compiler's Notes.

Eight days after Mr. Ray began working as a trusty, the trial court issued its judgment in Mr. Ray's case on July 31, 2013. The trial court used a judgment form that contained the following line: "Minimum service prior to eligibility for work release, furlough, trusty status and rehabilitation programs: _____ % (Misdemeanor Only)." See Tenn. Sup. Ct. R. 17. The trial judge placed "75" in the blank space preceding the percent symbol.

This 75% notation first came under scrutiny in November 2013, after Mr. Ray was mistakenly released from custody on October 24, 2013, "as a result of a miscalculation of his sentence by a corrections officer." After learning that Mr. Ray had been released from confinement, the trial judge, on November 14, 2013, called Sergeant Chester Long, Jr., a correctional officer at the Jail, to inquire about Mr. Ray's early release. During this conversation, the trial judge advised Sergeant Long that, pursuant to the trial court's judgment, Mr. Ray was not eligible to earn work credits until he had served 75% of his eleven month, twenty-nine day sentence in actual confinement. The trial judge directed Sergeant Long to have Mr. Ray picked up and returned to the Jail to serve the balance of his sentence.

When the trial judge called him, Sergeant Long was not aware Mr. Ray had been released but promised to investigate the matter. Sergeant Long thereafter talked with his supervisor, Captain Tom Rudder, the Jail administrator, about the trial judge's instructions. Captain Rudder and Sergeant Long subsequently met with the trial judge to discuss the matter further. In a declaration filed in the District Court, the trial judge stated that, during this meeting, he "explained to Captain Rudder and Sergeant Long that pursuant to [the 75%] provision [in the judgment], [Mr. Ray] was not entitled to work credits until he [had] served 75% of his sentence. Both Sergeant Long and Captain Rudder stated that they understood [the trial judge's] orders and pursuant to [his] orders would not apply work credits to [Mr. Ray's] sentence."

After this meeting, Sergeant Long called Mr. Ray and instructed him to return to the Jail, explaining that he had been mistakenly released from custody too soon. Mr. Ray returned to the Jail as instructed on November 17, 2013, and he immediately resumed working as a trusty. One week later, on November 24, 2013, Mr. Ray filed a motion through counsel asking the trial court to suspend the balance of his sentence or, in the alternative, to place him on work release. See Tenn. Code Ann. § 40-35-306(c) ("At any time during the period of continuous confinement ordered pursuant to this section, the defendant may apply to the sentencing court to have the balance of the sentence served on probation supervision. The application may be made at no less than two-month intervals.")

Mr. Ray attended the hearing on the motion. At the conclusion of the hearing, the trial court denied the motion, explaining:

Now, I want to make sure it's clear too, he's not eligible for any type of work release credits. He's not eligible for any type of trust[y] credits. The only credits that he can earn are good behavior credits. That's the reason it's listed at [75%]. So, you know, once he's served a minimum of nine months in jail then if he's behaved himself in jail then the sheriff could give him good behavior credits and let him out on this 11 months and 29 day period of shock incarceration. You know, that was the intent of the Court. That's the Judgment of the Court[,] and I still feel like that's the proper sentence.

The trial court's July 31, 2013 judgment was not amended after this hearing, and Mr. Ray did not appeal the trial court's denial of his motion. In a deposition filed in the District Court, Mr. Ray acknowledged that the trial court told him he would not be eligible for work credits until after he had served 75% of the confinement portion of his sentence. Nevertheless, Mr. Ray continued working as a trusty at the Jail until his release on April 16, 2014.

In calculating his April 16, 2014 release date, the Jail applied only good behavior credits authorized by Tennessee Code Annotated section 41-2-111(b) (2014).[6] The Jail did not apply work credits described in other statutes. See Tenn. Code Ann. §§ 41-2-146,[7] -147,[8] and -150[9] (2014). In the declaration submitted to the District Court, the trial

---

[6] Section 41-2-111(b) provides:

(b) Each such prisoner who has been sentenced to the county jail or workhouse for any period of time less than one (1) year on either a misdemeanor or a felony, and who behaves uprightly, shall have deducted from the sentence imposed by the court time equal to one quarter (¼) of the sentence. In calculating the amount of good time credit earned, the one-quarter reduction shall apply to the entire sentence, including pre-trial and post-trial confinement. Fractions of a day's credit for good time of one half (½) or more shall be considered a full day's credit. If any prisoner violates the rules and regulations of the jail or workhouse, or otherwise behaves improperly, the sheriff or superintendent of the institution may revoke all or any portion of the prisoner's good time credit; provided, that the prisoner is given a hearing in accordance with due process before a disciplinary review board and is found to have violated the rules and regulations of the institution.

[7] Section 41-2-146 provides:

(a) When any prisoner has been sentenced to imprisonment in a county workhouse or jail or is serving time in the county jail or workhouse pursuant to an agreement with the department of correction, the sheriff or superintendent of the county shall be authorized to permit the prisoner to participate in work programs.

(b) Work performed by the prisoner under this section shall be credited toward reduction of the prisoner's sentence in the following manner: for each one (1) day worked on such duties by the prisoner the sentence shall be reduced by two (2) days.

judge stated that applying work credits to the confinement portion of Mr. Ray's sentence before he had served 75% of it would have been a violation of his order. By not applying work credits, the Jail had complied with his ruling.

In contrast, Mr. Ray alleged in his federal civil rights action that, had Madison County afforded him the work credits he earned as a trusty, he would have been released from the Jail seven weeks earlier. Mr. Ray argued that, by holding him beyond the date he should have been released, Madison County deprived him of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. Mr. Ray contended that "he had a liberty interest in the work credits that the [trial court's] order and instructions could not defeat."

---

[8] Section 41-2-147 provides in relevant part:

(a) The sheriff or administrative authority having responsibility for the custody of any person sentenced to a local jail or workhouse pursuant to the provisions of . . . present . . . § 40-35-306 . . . shall, when a person has become eligible for work related programs pursuant to [§ 40-35-306], be authorized to permit the person to perform any of the duties set out in § 41-2-123 [road work by prisoners] or § 41-2-146 [work programs].

(b) Work performed by a prisoner under this section shall be credited toward reduction of the prisoner's sentence in the following manner: for each one (1) day worked on such duties by the prisoner the sentence shall be reduced by two (2) days.

(c) Any prisoner receiving sentence credits under this section shall not be eligible for the sentence reduction authorized by § 41-2-111 [good time credit].

[9] Section 41-2-150 provides in relevant part:

(a) Notwithstanding any other law to the contrary, except as provided in subsection (b), any person sentenced to the county workhouse or jail, either for a felony or misdemeanor conviction, in counties with programs whereby prisoners work either for pay or sentence reduction, or both, shall be required to participate in work programs during the period of the person's incarceration. Any prisoner who refuses to participate in those programs when work is available shall have any sentence reduction credits received pursuant to the provisions of § 41-2-123 [road work by prisoners] or § 41-2-146 [work programs] reduced by two (2) days of credit for each one (1) day of refusal to work. Any prisoner who refuses to participate in the work programs who has not received any sentence reduction credits pursuant to § 41-2-123 or § 41-2-146 may be denied good time credit in accordance with the provisions of § 41-2-111(b) and may also be denied any other privileges given to inmates in good standing for refusal to work.

(b) The only exceptions to the requirements of subsection (a) shall be for those persons who, in the opinion of the sheriff or the superintendent of the jail, would present a security risk or a danger to the public if allowed to leave the confines of the jail or workhouse and those persons who, in the opinion of a licensed physician or licensed medical professional, should not perform the labor for medical reasons.

Madison County moved for summary judgment in the District Court, arguing that Tennessee statutes and decisions authorize a sentencing judge to establish the percentage of actual confinement that a split confinement inmate must serve prior to becoming eligible to accrue work credits. The District Court denied Madison County's motion for summary judgment.[10] Nevertheless, the District Court certified the following questions to this Court:

> 1. Does a Tennessee sentencing court or the county sheriff possess the ultimate authority to determine the eligibility of a felon sentenced to serve a split confinement sentence in a local jail or workhouse to participate in a trusty work program and, therefore, be entitled to work credits under Tennessee Code Annotated §§ 41-2-146 or 41-2-147?
>
> 2. In the event a Tennessee sentencing court issues an improper or potentially improper sentence, does a sheriff have a duty under Rule 36.1 or the Tennessee Rules of Criminal Procedure or under any other Tennessee law to challenge the sentence, or is [it] the duty of the criminal defendant, the defense attorney and the district attorney general to challenge an illegal sentence?

We accepted certification of these two questions but also directed the parties to file supplemental briefs addressing some additional underlying questions:

> 1. When a sentencing court imposes a sentence of split confinement pursuant to Tenn. Code Ann. § 40-35-306, whereby a defendant is ordered to serve a period of continuous confinement of up to one year in the local jail or workhouse followed by a period of probation, which additional statutory sentencing provisions, if any, dictate how the period of continuous confinement is to be served?
>
>> A. Does Tenn. Code Ann. § 40-35-302(d), Tenn. Code Ann. § 40-35-314(b)(1), or any other statutory provision authorize a sentencing court (imposing a sentence of split confinement pursuant to Tenn. Code Ann. § 40-35-306) to fix a percentage of the continuous confinement portion that a defendant must serve prior to being eligible for consideration in a work release/trusty program in the local jail or workhouse?
>>
>> B. Tenn. Code Ann. § 40-35-211(3) provides that if a defendant is convicted of an offense designated as a felony but the court imposes a sentence of less than one year in the jail or local workhouse, the defendant is considered a felon but he is sentenced as in the case of a

---

[10] As already noted, the District Court granted the individual defendants summary judgment, and they are not before this Court.

misdemeanor. Despite the reference in the Sentencing Commission Comments that this section continues the practice of allowing certain Class E felons to serve a sentence of less than one year in the local jail or workhouse, did the General Assembly intend for this statutory section to apply to a defendant who, as here, was convicted of a Class B felony and received a ten-year sentence to be served in split confinement with 11 months, 29 days confinement in the local jail or workhouse and the balance probated?

2. If the sentencing court imposes a sentence of split confinement and is authorized to fix a percentage of service that a defendant must serve prior to becoming eligible for work credits, does such authority conflict with Tenn. Code. Ann. §§ 41-2-146, 41-2-147, 41-2-150, or any other provision related to earning or crediting work credits?

Ray v. Madison Cnty., M2016-01577-SC-R23-CV (Tenn. Dec. 21, 2016) (order accepting certification and requesting supplemental briefing of underlying issues). We also invited the Tennessee Bar Association, the Tennessee Association of Criminal Defense Lawyers, the Tennessee Attorney General, the Tennessee District Public Defenders Conference, and the Tennessee District Attorneys General Conference to submit amici curiae briefs. Id. All have done so, and we are grateful for the additional perspectives they have provided.

## II. Standards of Review

Tennessee Supreme Court Rule 23 provides that this Court "may, in its discretion, answer questions of law certified to it by . . . a District Court of the United States in Tennessee" if the questions of state law are "determinative of the cause" and "there is no controlling precedent in the decisions of the Supreme Court of Tennessee." Tenn. Sup. Ct. R. 23, § 1. Rule 23 "promotes judicial efficiency and comity and protects this State's sovereignty." Yardley v. Hosp. Housekeeping Sys., LLC, 470 S.W.3d 800, 803 (Tenn. 2015). This Court has exercised its authority in this case to adjust the certified questions "to provide the guidance actually sought." Shorts, 278 S.W.3d at 280 n.13 (citing 17A Charles Alan Wright et al., Federal Practice & Procedure, Jurisdiction 3d. § 4248 n.67 (Westlaw 2009)). De novo review applies to all the questions of law presented herein. Shorts, 278 S.W.3d at 274.

Furthermore, the answers to these questions of law depend upon the interpretation of statutes; therefore, we apply the familiar rules of statutory construction. Id. A court's overarching purpose in construing statutes is to ascertain and effectuate legislative intent, without expanding a statute beyond its intended scope. Baker v. State, 417 S.W.3d 428, 433 (Tenn. 2013). Words used in a statute "must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." Mills v. Fulmarque, Inc., 360 S.W.3d 362, 368 (Tenn. 2012). We endeavor to construe

statutes in a reasonable manner "which avoids statutory conflict and provides for harmonious operation of the laws." Baker, 417 S.W.3d at 433 (internal quotations omitted). Where statutory language is ambiguous or a statutory conflict exists, we may consider and discern legislative intent from matters other than the statutory language, "such as the broader statutory scheme, the history and purpose of the legislation, public policy, historical facts preceding or contemporaneous with the enactment of the statute, earlier versions of the statute, the caption of the act, and the legislative history of the statute." Womack v. Corr. Corp. of Am., 448 S.W.3d 362, 366 (Tenn. 2014) (citing Pickard v. Tennessee Water Quality Control Bd., 424 S.W.3d 511, 518 (Tenn. 2013)). We presume that the General Assembly has knowledge of its prior enactments and knows the state of the law and the existence of other statutes relating to the same subject at the time it enacts new statutes. Shorts, 278 S.W.3d at 277; Neff v. Cherokee Ins. Co., 704 S.W.2d 1, 4 (Tenn. 1986). While this Court has often applied these principles, doing so in the context of the many statutes raised in this appeal has been particularly difficult because of the issues noted below.

## III. Analysis

### A. Authority of Trial Courts Imposing Split Confinement Sentences

Eight years ago a federal court certified a question of law under Rule 23, which required this Court to confront "inconsistent and overlapping" statutes concerning the applicability of and responsibility for calculating sentence credits for certain split confinement sentences. Shorts, 278 S.W.3d at 274-75, 282. A federal lawsuit has once again "revealed what we believe to be a lack of statutory clarity" and "gaps" in Tennessee statutes regarding split confinement sentencing procedures.[11] Id. With no

---

[11] In a declaration offered in support of the individual defendants' motion for summary judgment, which the District Court quoted in its order granting in part and denying in part summary judgment, Captain Rudder described the uncertainty in Tennessee law as follows:

Tennessee law is not clear on how a jail should apply said credits. Thus, city and county jails across Tennessee calculate and apply jail credits differently because state law is not clear on how said credits should be calculated or applied.

Specifically, there are questions not answered under Tennessee law concerning whether an inmate's time in jail should be calculated on a day to day, week to week, or month to month basis. Also there ha[ve] been discussions as to how many days are to be considered in a sentence of 11 months and 29 days[,] and there are different methods used by different facilities as to said timeframe. For example, some jails will not provide an inmate "work credits" until he has worked more than 25% of his entire sentence because before he does so, they only apply the "good time credits," which amount to 25% of his sentence. Thus, in such a situation, [a]n inmate serving 11 months, 29 days, would not receive any work credits until after he worked around 91 days. Other jails, like the Madison County Jail, calculate an inmate's credits on a monthly basis, so that once an inmate has worked enough in a month to cover more than 25% of his time in that month, he receives "work time credits" instead of "good time credits" for that month. Further, some jails calculate the credits on the back end of the entire sentence, including the

substantial legislative changes having been made in the interim, we remain frustrated by the lack of express and clear statutory guidance on how split confinement sentences are to be imposed and how a split confinement defendant's eligibility for work and other rehabilitative programs is to be determined. Nevertheless, we are cognizant of our duty to wade into this quagmire a second time and resolve the dilemmas this case presents. We begin this unwelcome task by reviewing the principles about which there is no disagreement.

Under the Tennessee Sentencing Reform Act of 1989, as amended in 2005, Tennessee Code Annotated sections 40-35-101 through 505 ("Sentencing Act"), trial judges have broad discretion when fashioning sentences. State v. Bise, 380 S.W.3d 682, 706-07 (Tenn. 2012). "The [Sentencing] Act requires a case-by-case approach to sentencing, and authorizes, indeed encourages, trial judges to be innovative in devising appropriate sentences." State v. Burdin, 924 S.W.2d 82, 85 (Tenn. 1996). For felony offenses, the Sentencing Act provides trial courts with the following options: (1) continuous confinement either in a local jail or workhouse or in a Tennessee Department of Correction facility; (2) periodic confinement in a local jail or workhouse; (3) split confinement; (4) fines; (5) restitution; (6) probation; (7) work release; (8) community corrections; or (9) a combination of these options. Tenn. Code Ann. § 40-35-104(c) (2014).

The Sentencing Act encourages trial courts to utilize alternative sentences. Tenn. Code Ann. § 40-35-102(3)(C) (2014) ("Punishment shall be imposed to prevent crime and promote respect for the law by . . . [e]ncouraging effective rehabilitation of those defendants, where reasonably feasible, *by promoting the use of alternative sentencing and correctional programs that elicit voluntary cooperation of defendants . . . ."* (emphasis added)). To this end, the Sentencing Act allows trial courts to order probation or split confinement sentences for most sentences of ten (10) years or less. Tenn. Code Ann. §§ 40-35-303(a), 40-35-306 (2014 & Supp. 2016). Where a trial court orders probation,

> the court shall sentence the defendant to a specific sentence but shall suspend the execution of all or part of the sentence and place the defendant on supervised or unsupervised probation either immediately or after a period of confinement for a period of time no less than the minimum sentence allowed under the classification and up to and including the statutory maximum time for the class of the conviction offense.

---

probationary period. Thus, an inmate sentenced to "shock probation" would receive work credits on his entire sentence, not just the portion of the sentence spent in jail, meaning he would likely spend no less time in jail.

Tenn. Code Ann. § 40-35-303(c)(1). When ordering probation, trial courts have broad authority both to establish terms for the supervision of probation and also to impose conditions with which offenders must comply, id. § -303(d)(1)-(12), including any "conditions reasonably related to the purpose of the offender's sentence and not unduly restrictive of the offender's liberty or incompatible with the offender's freedom of conscience, or otherwise prohibited by this chapter," id. § -303(d)(9).

As already noted, a split confinement sentence is "shock probation" and a valuable alternative sentencing option that combines "incarceration and rehabilitation as part of a sentencing program." Tenn. Code Ann. § 40-35-306, Sentencing Comm'n Cmts; see also Shorts, 278 S.W.3d at 280 (stating that "[s]plit confinement sentences are, by definition, different from sentences of continuous confinement–*technically, they are probated sentences*" (emphasis added)). When imposing a split confinement sentence, trial courts order defendants, like Mr. Ray, to serve "a portion of the sentence in continuous confinement for up to one (1) year in the local jail or workhouse," and the confinement is followed by "probation for a period of time up to and including the statutory maximum time for the class of the conviction offense." Tenn. Code Ann. § 40-35-306(a). If a defendant serving a split confinement sentence violates "the terms of probation" or "the rules of the institution where the defendant is confined," the trial court has authority "to revoke the sentence of split confinement and impose a sentence" which "shall not exceed the remainder of the full sentence." Id. § -306(b). On the other hand, "[a]t any time during the period of continuous confinement ordered . . . the defendant may apply to the sentencing court to have the balance of the sentence served on probation supervision," so long as the application is "made at no less than two-month intervals." Id. § -306(c). Thus, under section 40-35-306, the trial court retains authority to increase or decrease the confinement portion of the sentence as appropriate for the circumstances.

However, no language in section 40-35-306 expressly answers the first question presented in this appeal—whether a trial court has authority to require a split confinement defendant to serve a certain percentage of the sentence in actual confinement before becoming eligible to participate in work programs and accrue work credits. By contrast, as Mr. Ray points out, a prior version of the statute authorizing split confinement sentences expressly *required* trial courts to set such a percentage. Tenn. Code Ann. § 40-35-306 (a)-(b)(1) (1984).[12]

---

[12] Subsections (a) and (b)(1) of the 1984 version of section 40-35-306, now repealed, provided as follows:

> (a) A defendant receiving probation may be required to serve a portion of the sentence in continuous confinement for up to one (1) year in the jail or workhouse, with the remainder of such sentence on probation supervision.

> (b)(1) The court shall specify what percentage of the sentence imposed must be served in actual confinement before the defendant may become eligible for release classification status which may include all programs except parole. Such percentages shall be expressed in one (1) of the following numeric percentages: Zero percent (0%),

Moreover, none of the other statutes on which Madison County relies expressly confer such authority on trial courts. Admittedly, one of these statutes, Tennessee Code Annotated section 40-35-314(b)(1) (2014), states that, "[w]hen imposing the sentence to the local jail or workhouse, the defendant is eligible for release classification status as provided in this chapter; *however, the court may specify an earlier percentage of eligibility for all programs except parole.*"[13] Nevertheless, subsection (a) of section 40-35-314 expressly limits its application to felony offenders serving split confinement sentences "*of eight (8) years or less.*" Tenn. Code Ann. § 40-35-314(a) (emphasis added). This statute clearly does not apply to Mr. Ray's split confinement sentence of ten years.[14]

---

ten percent (10%), twenty percent (20%), thirty percent (30%), forty percent (40%), fifty percent (50%), sixty percent (60%), seventy percent (70%), eighty percent (80%), ninety percent (90%), or one hundred percent (100%).

[13] Tennessee Code Annotated section 40-35-314 provides in relevant part:

(a) If confinement is directed, the court shall designate the place of confinement as a local jail or workhouse if required pursuant to § 40-35-104(b) *or, if the sentence is eight (8) years or less and combined with periodic or split confinement not to exceed one (1) year, the court shall designate the place of confinement as a local jail or workhouse. . . .*

(b)(1) When imposing the sentence to the local jail or workhouse, the defendant is eligible for release classification status as provided in this chapter; *however, the court may specify an earlier percentage of eligibility for all programs except parole.* This percentage shall be expressed in one (1) of the following numeric percentages: zero percent (0%), ten percent (10%), twenty percent (20%), thirty percent (30%), forty percent (40%) or fifty percent (50%); provided, that the percentage shall be no higher than the release eligibility percentage under § 40-35-501.

(2) In the event the judgment does not specify a percentage as provided in subdivision (b)(1), the defendant shall be eligible for the programs, except parole, six (6) months prior to release eligibility date under § 40-35-501.

(c) The court shall retain full jurisdiction over the defendant during the term of the sentence and may reduce or modify the sentence or may place the defendant on probation supervision where otherwise eligible. Following the first application, applications to reduce or to alter the manner of the service of the sentence may be made at no less than two (2) month intervals.

Tenn. Code Ann. § 40-35-314(a)-(c) (2014) (emphases added).

[14] When the Sentencing Act was initially enacted, probation and split confinement sentences were available only for sentences of eight years or less. In 2005, the General Assembly amended the Sentencing Act to make probation and split confinement sentences available for sentences of ten years or less. See 2005 Tenn. Pub. Acts ch. 353, § 7. However, section 40-35-314(a) was not amended in 2005 and remains applicable only to split confinement sentences of eight years or less. We are not at liberty to extend the statute to apply to split confinement sentences greater than eight years but urge the General Assembly to enact a statute that addresses this gap in some manner. We are constrained to point out,

As Madison County points out, another statute specifically authorizes, indeed obligates, trial courts to specify in the judgment the percentage of a misdemeanor sentence that a misdemeanor offender must serve in actual confinement before becoming "eligible for consideration for work release, furlough, trusty status and related rehabilitative programs." Tenn. Code Ann. § 40-35-302(d) (2014). This statute states:

> In imposing a misdemeanor sentence, *the court shall fix a percentage of the sentence that the defendant shall serve. After service of such a percentage of the sentence, the defendant shall be eligible for consideration for work release, furlough, trusty status and related rehabilitative programs.* The percentage shall be expressed as zero percent (0%), ten percent (10%), twenty percent (20%), thirty percent (30%), forty percent (40%), fifty percent (50%), sixty percent (60%), seventy percent (70%) but not in excess of seventy-five percent (75%). If no percentage is expressed in the judgment, the percentage shall be considered zero percent (0%). *When the defendant has served the required percentage, the administrative authority governing the rehabilitative program shall have the authority, in its discretion, to place the defendant in the programs as provided by law.* In determining the percentage of the sentence to be served in actual confinement, the court shall consider the purposes of this chapter, the principles of sentencing and the enhancement and mitigating factors set forth in this chapter and shall not impose such percentages arbitrarily.

Tenn. Code Ann. § 40-35-302(d) (emphases added). The language of this statute is quite similar to the language that appeared in prior versions of the statute authorizing split

however, that even if section 40-35-314(b) applied here, it provides no authorization for the trial court's decision to require Mr. Ray to serve 75% of the confinement portion of his sentence before becoming eligible for work programs. Rather, section 40-35-314(b) states that an inmate "is eligible for release classification status *as provided in this chapter;* however, the court may specify *an earlier percentage of eligibility for all programs except parole.*" Tenn. Code Ann. § 40-35-314(b)(1) (emphasis added). A trial court exercising its option to designate "an earlier percentage of eligibility" must express the percentage as "zero percent (0%), ten percent (10%), twenty percent (20%), thirty percent (30%), forty percent (40%) or fifty percent (50%); *provided, that the percentage shall be no higher than the release eligibility percentage under § 40-35-501.*" Id. (emphasis added). For Range I sentences, like Mr. Ray received, "this chapter," i.e., the Sentencing Act, sets the release eligibility percentage at "thirty percent (30%) of the actual sentence imposed less sentence credits earned and retained by the defendant." Tenn. Code Ann. § 40-35-501(c) (2014). Thus, even if section 40-35-314(b) applied, it provides no authority for a trial court to set a percentage higher than 30% on a Range I sentence, although it authorizes trial judges to set a lesser percentage. Furthermore, in Shorts, this Court explained that prisoners serving split confinement sentences are not assigned release eligibility dates as contemplated in sections 40-35-501 and 40-35-314. Shorts, 278 S.W.3d at 280-81. Thus, by its own terms, and for the reasons stated in Shorts, section 40-35-314(b) does not apply.

confinement sentences. See supra at note 11. But section 40-35-302(d) is plainly and expressly limited to misdemeanor sentencing. It does not apply to Mr. Ray, who pleaded guilty to a Class B felony and received a felony split confinement sentence.

Nevertheless, Madison County argues that, even though section 40-35-302(d) does not apply by its own terms to Mr. Ray's sentence, another statute, Tennessee Code Annotated section 40-35-211(3), applies section 40-35-302(d) to felony offenders who are ordered to serve less than one year in a local jail as part of a felony split confinement sentence. We do not agree.

Section 40-35-211 provides:

In fixing a sentence for a felony or misdemeanor, the court shall impose a specific sentence length for each offense:

(1) Specific sentences for a felony shall be for a term of years or months or life, if the defendant is sentenced to the department of correction; or a specific term of years, months or days if the defendant is sentenced for a felony to any local jail or workhouse. Specific sentences for a misdemeanor are for a specific number of months or days or hours or any combination thereof. There are no indeterminate sentences. Sentences for all felonies and misdemeanors are determinate in nature, and the defendant is responsible for the entire sentence undiminished by sentence credits of any sort, except for credits authorized by § 40-23-101 relative to pretrial jail credit, or §§ 33-5-406 and 33-7-102 relative to mental examinations and treatment, and prisoner sentence reduction credits authorized by § 41-21-236.

(2) If the minimum punishment for any offense is imprisonment in the penitentiary for one (1) year, but in the opinion of the court the offense merits a lesser punishment, the defendant may be sentenced to the local jail or workhouse for any period less than one (1) year, except as otherwise provided.

(3) If a defendant is convicted of an offense designated as a felony but the court imposes a sentence of less than one (1) year in the local jail or workhouse, the defendant shall be considered a felon but shall be sentenced as in the case of a misdemeanor, and, therefore, shall be entitled to sentence credits under § 41-2-111. Upon the defendant becoming eligible for work release, furlough, trusty status or related rehabilitative programs as specified in § 40-35-302(d), the defendant may be placed in the programs by the sheriff or administrative authority having jurisdiction over the local jail or workhouse.

Tenn. Code Ann. § 40-35-211 (2014). Accepting Madison County's argument would require us to read subsections (2) and (3) of section 40-35-211 in isolation from each other. But, as the Sentencing Commission Comments to section 40-35-211 explain, these subsections must be read as a unit:

> [t]his section requires that a determinate sentence be imposed in all felony and misdemeanor cases. Subdivision (1) permits a reduction of the sentence for certain types of pretrial jail credits and prisoner sentence reduction credits as provided in other sections.
>
> *Subdivision (2) continues the practice of prior law which permits the trial judge to reduce sentences to less than one year where the minimum statutory penalty is one year. Under the sentencing grid, this would be possible for a Class E, Range I, offender. The sentence is still considered a felony, but the court may impose a sentence of less than one year to be served in the local jail or workhouse. In such instances, subdivision (3) allows some aspects of misdemeanor sentencing to apply.*

Tenn. Code Ann. § 40-35-211, Sentencing Comm'n Cmts. (emphasis added). Reading the statute as a whole, and particularly reading subsections (2) and (3) together in light of the Sentencing Commission Comments, we conclude that subsection (3) applies only to the circumstances described in subsection (2)—where a defendant is convicted of a felony with a minimum one-year sentence and the trial court imposes a sentence of less than one year. Under current law, only Class E felonies meet the description provided in subsection (2). Mr. Ray pleaded guilty to a Class B felony, not a Class E felony. The minimum sentence for the offense to which Mr. Ray pleaded guilty was eight years, not one year. Section 40-35-211(3) therefore does not apply to Mr. Ray's case.

Thus, we conclude that none of the confusing and inconsistent statutes expressly confers authority on a trial court to include, in a judgment imposing a split confinement felony sentence, a percentage of actual confinement that must be served before a split confinement felony defendant becomes eligible to accrue work credits. By the same token, however, no statute expressly precludes trial courts from doing so. As already noted, this Court is obligated to adopt a reasonable construction of the law that provides for the harmonious operation of the laws and avoids absurd results. In the context of the statutes at issue in this appeal, we acknowledge that this obligation is certainly difficult to fulfill. Nevertheless, considering all the statutes, relevant authorities, and the arguments of the parties, as well as those of the amici curiae, we are convinced that the Sentencing Act implicitly authorizes trial courts to establish the percentage of a felony split confinement sentence that a defendant must serve in actual confinement before becoming eligible to earn work sentencing credits.

We reach this conclusion for several reasons. First, the statute authorizing split confinement sentences includes no limitations on a trial court's authority to impose such

a condition when extending to a felony offender the substantial benefits of a split confinement sentence. Second, section 40-35-306 expressly reposes in the trial court the authority to revoke or suspend a split confinement felony sentence as circumstances may necessitate. See Tenn. Code Ann. § 40-35-306(b)-(c). Third, as we explained in Shorts, split confinement sentences are technically probated sentences. 278 S.W.3d at 280. When ordering probation, Tennessee Code Annotated section 40-35-303(d)(9) authorizes trial courts to impose "conditions reasonably related to the purpose of the offender's sentence." This statute is broad enough to provide trial courts with authority to ensure that a person sentenced to split confinement—shock probation—serves an appropriate portion of the sentence in actual confinement, and setting a percentage that must be served before the inmate may accrue two-for-one work sentencing credits is essential to this purpose. Fourth, another statutory provision, Tennessee Code Annotated section 40-35-314(g)(1), states that "[a]ny defendant convicted of a felony and sentenced to serve such sentence in a local jail or workhouse pursuant to . . . § 40-35-306 . . . shall be ordered, as a part of the sentence, to participate in any work program operated by the jail or workhouse in which the defendant is incarcerated." By affording trial courts authority to order a defendant, as part of a split confinement sentence under section 40-35-306, to participate in a local jail's work program, this statute also implicitly affords trial courts authority to prescribe the conditions that an inmate must satisfy before participating in a work program. Fifth, any holding that trial courts lack authority to fix a percentage of a felony split confinement sentence that must be served in actual confinement before work credits may be accrued has the potential to discourage trial courts from utilizing split confinement sentences. Discouraging the use of alternative sentences would be inconsistent with the Sentencing Act, which encourages trial courts to utilize alternative sentences. Tenn. Code Ann. § 40-35-103(6). Sixth, any holding that trial courts lack such authority would also be inconsistent, in spirit if not in letter, with a decision of this Court, rendered before split confinement sentences were expressly authorized by statute, which held that trial courts possess authority to order a period of confinement as a condition of probation. See State v. Gaines, 622 S.W.2d 819, 820-21 (Tenn. 1981) (holding that, under a statute stating that trial courts could set "such conditions of probation as the trial judge shall deem fit and proper," trial courts, "in granting probation may require as a condition thereof that the defendant be incarcerated for such reasonable and lawful period or periods of time as the trial judge deems fit and proper."). Finally, holding that trial courts lack such authority when imposing felony split confinement sentences, when the Sentencing Act obligates trial courts to set such a percentage for misdemeanor offenders who commit less serious offenses, would be inconsistent with the purposes and principles of the Sentencing Act. See Tenn. Code Ann. §§ 40-35-102(1)-(2), -103(1)-(4). Accordingly, we conclude that the Sentencing Act implicitly authorizes trial courts to include, in a judgment imposing a felony split confinement sentence, the percentage of the sentence that must be served in actual confinement before the defendant may participate in work programs and earn work credits. Establishing the percentage of actual confinement that a felony split confinement defendant must serve before accruing work credits is encompassed within the wide discretion trial courts possess under the

Sentencing Act when imposing alternative sentences.  See State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012) (discussing the discretion trial courts possess).[15]

A trial court exercising this authority may fix the actual confinement percentage at 100%, if doing so is consistent with the principles of the Sentencing Act.  See, e.g., State v. Waller, No. M2007-02688-CCA-R3-CD, 2009 WL 230493 (Tenn. Crim. App. Feb 2, 2009) (imposing a split confinement sentence of twelve months to be served in confinement at 100%); State v. Wells, No. M2002-02290-CCA-R3-CD, 2003 WL 22204491 (Tenn. Crim. App. Sept. 18, 2003) (imposing a one-year split confinement sentence at 100%); State v. Franklin, No. 01C01-9510-CR-00348, 1997 WL 83772 (Tenn. Crim. App. Feb. 28, 1997) (upholding a split confinement sentence of one year to be served at 100%), perm. app. denied (Tenn. Nov. 17, 1997).  However, even if a trial court orders 100% service of a split confinement sentence—which would effectively preclude a defendant from earning work credits—the 100% requirement does not preclude inmates from earning good time credits under Tennessee Code Annotated section 41-2-111(b).  See State v. Hudson, No. E2001-00377-CCA-R3-CD, 2002 WL 264625, at *4 (Tenn. Crim. App. Feb. 19, 2002) (explaining that section 41-2-111(b) entitles defendants sentenced to county jails for less than one year to good conduct credits and citing  earlier cases applying this same proposition), perm. app. denied (Tenn. July 1, 2002).

We also conclude that recognizing a trial court's implicit authority to fix a percentage of actual confinement that a felony split confinement defendant must serve before participating in work programs does not conflict with other statutory provisions related to work credits.  Tennessee Code Annotated section 41-2-146(a) generally provides that "the sheriff or superintendent of the county shall be authorized to permit the prisoner to participate in work programs."  Another statute states that the sheriff may allow inmates to work "within the county on roads, parks, public property, public easements or alongside public waterways up to a maximum of fifty feet (50') from the shoreline."  Tenn. Code Ann. § 41-2-123(b)(1) (2014).  Sections 41-2-123 and 41-2-146 describe the type of work inmates may perform, whereas another statute, Tennessee Code Annotated section 41-2-147, establishes that inmates cannot participate in these work programs and accrue work credits until they have become eligible to do so.  Specifically, section 41-2-147(a) states:

> The sheriff or administrative authority having responsibility for the custody of any person sentenced to a local jail or workhouse pursuant to the provisions of . . . present § 40-35-302, *§ 40-35-306,* § 40-35-307, or § 40-

---

[15] The judgment form provided in Rule 17 of the Rules of the Tennessee Supreme Court does not include a separate blank for the trial court to specify the percentage of a felony split confinement sentence that must be served before the defendant becomes eligible for work programs.  Nevertheless, the form does include a box titled "Special Conditions," and trial courts should note in this space the percentage of a felony split confinement sentence the inmate must serve before becoming eligible to participate in work programs and accrue work credits.

35-314 shall, *when a person has become eligible for work related programs pursuant to those sections*, be authorized to permit the person to perform any of the duties set out in § 41-2-123 or 41-2-146.

Tenn. Code Ann. § 41-2-147(a) (emphases added). This statute clearly conditions the power of a sheriff or administrative authority to permit the prisoner to participate in work programs upon the prisoner having become eligible to do so, and an inmate's eligibility is determined by the percentage fixed in the judgment of the trial court.

Our reading of section 41-2-147 is consistent with a 2006 decision of the Court of Criminal Appeals, which construed section 41-2-147 in the context of a judgment ordering 100% service of a DUI sentence. The Court of Criminal Appeals held:

We construe the phrase "has become eligible for work-related programs pursuant to [40-35-302(d)]" to mean that the inmate may be authorized to participate in such programs only after he or she has served the fixed percentage of the sentence as set by the court. *Thus, the trial court controls the eligibility to participate in these programs to the extent that the court fixes the percentage of confinement required before participation in the "two for one" work programs is permitted.*

State v. Lewis, No. M2004-02450-CCA-R3-CD, 2006 WL 1816317, at *7 (Tenn. Crim. App. June 28, 2006) (emphasis added), perm. app. denied (Tenn. Nov. 20, 2006) (footnote omitted); see also Op. Tenn. Att'y. Gen., No. 91-96 (Dec. 4, 1991) (opining that for inmates serving split confinement sentences "[e]ligibility for participation in such work programs is determined either by a percentage set by the court at the time of sentencing, or, if no such percentage has been set, by the release eligibility date under T[ennessee Code Annotated section] 40-35-501. T[ennessee Code Annotated section] 40-35-314(b)(1) and (2) (1990).") The General Assembly has not removed the eligibility language from section 41-2-147 since the decision in Lewis, and we conclude that the Lewis holding applies to felony split confinement sentences, as well as DUI sentences. The language of section 41-2-147(a) concerning eligibility controls over any arguably conflicting statutory language elsewhere, because "[w]here a conflict is presented between two statutes, a more specific statutory provision takes precedence over a more general provision." Lovlace v. Copley, 418 S.W.3d 1, 20 (Tenn. 2013).

Moreover, this understanding of section 41-2-147 is consistent with our own discussion in Shorts of how sheriffs are to calculate release dates for split confinement defendants. There, we considered whether Tennessee Code Annotated section 8-8-201(a)(3), which sets out the duties of county sheriffs and requires sheriffs to calculate the release date and order the release of a person serving a split confinement sentence in a county jail. Shorts, 278 S.W.3d at 270. We observed that the statute imposed

- 18 -

a duty upon a Tennessee sheriff to enforce the terms of a judgment ordering a sentence of split confinement. This duty includes noting the term of confinement provided for in the judgment order, crediting the prisoner for time served as indicated on the judgment order, calculating any credits that may be earned, and timely releasing the prisoner at the conclusion of the period of confinement ordered.

Shorts, 278 S.W.3d at 282. The analysis in Shorts makes clear that the trial court's judgment is the lodestar by which sheriffs must be guided when calculating a felony split confinement defendant's release date and entitlement to sentence credits.

Mr. Ray nevertheless argues that Tennessee Code Annotated section 41-2-150 requires sheriffs to place all inmates in work programs upon their incarceration and thus entitles all inmates to receive work sentencing credits immediately. We cannot agree with this argument. Section 41-2-150 states that, "[n]otwithstanding any other law to the contrary," an inmate housed in a "county workhouse or jail, either for a felony or misdemeanor conviction . . . shall be required to participate in work programs during the period of the person's incarceration." Tenn. Code Ann. § 41-2-150(a). Prisoners who refuse to participate in work programs when work is available "shall have any sentence reduction credits received pursuant to the provisions of § 41-2-123 or § 41-2-146 reduced by two (2) days of credit for each one (1) day of refusal to work." Id. Any prisoner who refuses to work, but who has not already received any sentence reduction credits pursuant to sections 41-2-123, or 41-2-146, "may be denied good time credit in accordance with the provisions of § 41-2-111(b) and may also be denied any other privileges given to inmates in good standing for refusal to work." Id. Subsection (b) allows the sheriff to except from this work requirement persons who would present a security risk or a danger to the public if allowed to leave the jail or workhouse and persons who, "in the opinion of a licensed physician or licensed medical professional, should not perform the labor for medical reasons." Id. at § 41-2-150(b).

We read section 41-2-150 as establishing the obligation of inmates to work, when work is available and offered to them, but we conclude that nothing in this statute contradicts the requirement of section 41-2-147 that inmates must first become eligible to participate in work programs. A felony split confinement inmate does not become eligible to participate in a work program and accrue work sentencing credits until the inmate has served the percentage of actual confinement required by the trial court's judgment. Although section 41-2-150 grants sheriffs authority to determine when an inmate may be excused from work programs and not incur penalties for refusing to work, it does not confer upon sheriffs, or any other entity, the authority to determine an inmate's eligibility to participate in a work program and earn work credits. We therefore conclude that section 41-2-150 does not conflict with Tennessee Code Annotated section 41-2-147(a).

Furthermore, section 41-2-150 must be read in light of section 40-35-314(g), which, as already noted, *requires trial courts* to order inmates serving felony split confinement sentences pursuant to section 40-35-306 in the local jail to participate in work programs as part of the sentence. Again, by affording trial courts authority to order split confinement inmates to participate in work programs, this statute implicitly affords trial courts authority to prescribe the conditions of that participation. Read together, the relevant statutes recognize that the trial court's judgment remains paramount in determining when a felony split confinement inmate may participate in a work program and earn work credits.

Accordingly, in response to the first question certified by the District Court, we hold that sentencing judges in Tennessee have implicit authority to include in a judgment the percentage of a felony split confinement sentence that a defendant must serve in actual confinement before becoming eligible to participate in work programs. The trial court's implicit authority to establish this percentage does not conflict with the statutes governing work credits, because, as explained above, these statutes contemplate, albeit through a glass darkly, that an inmate must be *eligible* to participate in the program *before* a sheriff may allow the inmate to participate in such programs and earn work credits.

### B. Whether a sheriff has a duty under Tennessee law to challenge an improper or potentially improper sentence?

Both parties and most of the amici agree that the answer to this question is "No." Nevertheless, in the interest of being responsive to the District Court, we will address it as well. The Tennessee Constitution provides that the qualifications and duties of the Sheriff "shall be prescribed by the General Assembly." Tenn. Const. art. VII, § 1. This Court has acknowledged that more than 100 statutes in the Tennessee Code address the duties of sheriffs in this State. Renteria-Villegas v. Metro. Gov't of Nashville & Davidson Cnty., 382 S.W.3d 318, 321-22 (Tenn. 2012). Neither party to this appeal has suggested that any of these statutes expressly imposes on sheriffs a duty to challenge an improper or potentially improper sentence. Moreover, we have held that, rather than challenging a trial court's judgment as improper, sheriffs have a statutory "duty to see that the orders of the courts, including judgment orders, are enforced." Shorts, 278 S.W.3d at 281 (citing Tenn. Code Ann. § 8-8-201(a)(1) & (3)). As we explained in Shorts, Tennessee Code Annotated section 8-8-201(a)(1):

> Impose[s] a duty upon a Tennessee sheriff to enforce the terms of a judgment ordering a sentence of split confinement. This duty includes noting the term of confinement provided for in the judgment order, crediting the prisoner for time served as indicated on the judgment order, calculating any credits that may be earned, and timely releasing the prisoner at the conclusion of the period of confinement ordered.

Id. at 281-82 (citing Tenn. Code Ann. § 8-8-201(a)(1) & (3)). Another statute places a duty on each sheriff to execute a judgment of imprisonment as soon as possible. Tenn. Code Ann. § 40-23-103 (2012). Another statute prohibits a sheriff from appearing in any court as attorney or counsel for any party in any civil suit or criminal proceeding. Tenn. Code Ann. § 8-8-205(a) (2016). Under another statute, a sheriff may be held in contempt of court and be subject to civil liability for failing to obey any process. Tenn. Code Ann. § 8-8-207 (2016). From these statutes, and our discussion in Shorts, it is clear that Tennessee sheriffs are bound by judgments and orders and have no obligation or authority to challenge a sentence imposed by a court. Certainly, sheriffs may seek clarification of judgments and orders when necessary to fulfill their duty to see that court orders are enforced, but they have no duty to challenge an improper or potentially improper sentence.

Just as Tennessee statutes and decisions impose no duty on a sheriff to challenge an improper or potentially improper sentence, Tennessee Rule of Criminal Procedure 36.1 also imposes no duty on Tennessee sheriffs to do so. The language of Tennessee Rule of Criminal Procedure 36.1 very clearly provides a mechanism for only "the defendant or the state" to seek correction of an illegal sentence. Tenn. R. Crim. P. 36.1(a)(1). Rule 36.1 neither obligates nor permits a Tennessee sheriff to do so. Accordingly, we answer the second certified question in the negative: Tennessee sheriffs have no duty to challenge an improper or potentially improper sentence.

## IV. Conclusion

Notwithstanding the lack of any express statutory answers to the questions posed, we conclude: (1) that the Sentencing Act implicitly authorizes Tennessee trial judges to include in the judgment of a felony split confinement sentence the percentage of actual confinement the defendant must serve before becoming eligible to participate in a work program and earn work credits; and (2) that sheriffs in Tennessee have no duty to challenge a sentence as improper or potentially improper. Nevertheless, we entreat the General Assembly to address the gaps and inconsistencies in the statutes governing felony split confinement sentences, which have been identified in this opinion and in the earlier decision in Shorts, by either enacting a statute expressly adopting our analysis or addressing these matters in another fashion. Asking either trial judges or sheriffs to wade through the statutory quagmire that now exists is unreasonable and unworkable.

The Clerk is directed to transmit a copy of this opinion to the United States District Court for the Western District of Tennessee in accordance with Tennessee Supreme Court Rule 23, section 8. Costs in this Court are taxed equally to Jason Ray and Madison County, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE